The Louisville, New Albany and Chicago Railway Co. *v*. Berkey.

No. 16,586.

The Louisville, New Albany and Chicago Railway Company *v*. Berkey.

Action.—*Remedy*.—*Railroad*.—*Erecting Depot on Another's Land Without Objection*.—*Damages*.—Where a land owner stands by and, without objection, permits a railroad company to erect a depot on his land, and remains inactive with reference thereto for six years, he can not then recover possession of the land so appropriated by the railroad company. His remedy is in an action for damages.

Bill of Exceptions.—*Stenographer's Longhand Manuscript*.—*When Part of Record*.—Where the stenographer's longhand manuscript of the evidence is embraced in the bill of exceptions, and is properly certified to, the evidence is properly in the record, a certified copy thereof not being necessary.

From the Washington Circuit Court.

*E. C. Field* and *W. S. Kinnan*, for appellant.

*H. Morris*, for appellee.

Coffey, J.—This was an action by the appellee against the appellant, instituted in the Washington Circuit Court, to recover the possession of the real estate described in the complaint.

Among other facts appearing in the record, it is made to appear that the appellant's railroad was constructed prior to the year 1851. At the time of the construction of the road, one Thomas M. Harris was the owner, in fee, of the land in controversy.

In January, 1851, he platted what is known as Harristown, which covers an area of ten acres. The town consists of fifteen lots, six of which are situate west of the railroad, and the remainder on the east side of the road. The railroad runs in a southwesterly direction through the town, and Main street runs north and south.

Between Main street and the railroad, as shown by the

plat, is a plat of ground marked "D." In the written explanation of the plat, filed and recorded with it, is the following: "The space marked 'D,' for depot and other purposes."

The officers of the railroad campany objected to making Harristown a station on their road, on account of its proximity to the town of Salem, but it was finally agreed between Harris and the president of the company, in consideration that the company would make the town a station on its road, that it should have the space marked "D" for depot purposes.

Harris conveyed the tract marked "D" to one Trueblood, who, in 1851, erected a building upon it, within about twelve feet of the railroad track, and built a platform extending from the building to the track. The building was used as a depot for the use of the railroad company, and for a country store, from the time of its erection to 1885, and the platform was used for the accommodation of passengers and for loading and unloading freight. The occupant of the building was employed as station agent, and the company paid an agreed rent for the use of the building.

In the year 1885, the railroad company erected a new depot immediately south of the old building, and has, since that time, occupied it as such, and has ceased to use the old building.

In 1891, the appellee demanded possession of the ground on which the new depot stands, and the appellant refusing to surrender it, this suit was brought for its possession.

The ground upon which the new depot is erected has always been vacant until this building was constructed.

The appellant claims the right to occupy this land, upon the ground (1) that it constitutes a part of its right

of way, (2) under its contract, above referred to, with Harris while he owned the land.

Under the view we take of this case, we deem it unnecessary to inquire whether the land, upon which the depot in question stands, does or does not belong to the appellee.

In speaking of the class of cases to which this belongs, Mr. Wood, in his work on Railroads, Minor's edition, 1894, p. 927, says: "Considerations of public policy, as well as recognized principles of justice between parties, require that the courts should hold that the property of the owner can not be reclaimed, and that there only remains to him a right of compensation. This is the generally recognized doctrine; and it is rigidly applied even by those courts which interfere most liberally for the protection of landowners against the unlawful entry of railroad or similar corporations."

To the same effect are the adjudications in this State. *Indiana, etc., R. W. Co.* v. *Allen,* 113 Ind. 581; *Indiana, etc., R. W. Co.* v. *McBroom,* 114 Ind. 198; *Bravard* v. *Cincinnati, etc., R.R. Co.,* 115 Ind. 1; *Louisville, etc., R. W. Co.* v. *Beck,* 119 Ind. 124; *Sherlock* v. *Louisville, etc., R. W. Co.,* 115 Ind. 22; *Louisville, etc., R. W. Co.* v. *Soltweddle,* 116 Ind. 257; *Strickler* v. *Louisville, etc., R. W. Co.,* 125 Ind. 412; *Porter* v. *Midland R. W. Co.,* 125 Ind. 476; *Midland R. W. Co.* v. *Smith,* 135 Ind. 348.

In the case of *Louisville, etc., R. W. Co.* v. *Beck, supra,* after citing many of these cases, it was said by this court: "These cases declare the general rule, that a landowner who stand by, without demanding compensation, until a railroad company has so far completed and put in operation its road over his land as to involve the public interest, can neither enjoin the company nor maintain ejectment to recover his land. The only remedy left to the land-

owner, in such case, is to proceed within the proper time to have his damages assessed and enforced against the railroad company. This rule is founded upon the general principle of public policy, as well as upon the provisions of section 3953, R. S. 1881.''

So, again, in the case of *Indiana, etc., R. W. Co.* v. *Allen,* *supra,* in discussing the question now under consideration, it was said by this court, that the maxim, ''That regard be had to the public welfare as the highest law,'' goes far enough to supply ample ground for denying one who has slept upon his rights, a right to dispossess a railroad company charged with a service public in its nature and important to the social and commercial interests of the country.

It is matter of common knowledge that railroad companies can not conduct their business without depots. They are necessary to the convenience and comfort of the traveling public, and to the receipt and discharge of freight.

In this case, the appellant was permitted to enter upon the land which the appellee seeks to recover, and construct its depot, without objection from any one. Not only is this true, but it was permitted to occupy it after the depot was completed, for a period of nearly six years, without objection. If the appellee or his grantor is the owner of this land, a matter upon which it is not necessary for us to pass, objection should have been made sooner.

Assuming, without by any means deciding, that the appellee is the owner of the ground covered by the appellant's depot, we have no hesitancy in holding that he can not, under the facts here disclosed, recover its possession. His remedy is confined to the recovery of damages for its use.

It is contended, however, that the evidence in this

·cause is not in the record, and for that reason we can not look to the facts as they were developed on the trial.   In this contention, we think the appellee is in error.   The longhand manuscript of the evidence is embraced in a bill of exception, and properly certified to us by the clerk of the court in which it was filed.   It is not necessary, as contended by the appellant, that the clerk ·should send us a certified copy of this evidence.   One of the purposes of our statute is to save this expense.   The proper practice is to send us the original, as was done in. this case.

Judgment reversed, with directions to the circuit court to sustain the appellant's motion for a new trial.

Filed Feb. 22, 1894.