The Louisville, New Albany and Chicago Railway Company *v.* Miller.

Filed June 11, 1895.

———————◆———————

No. 16,320.

The Louisville, New Albany and Chicago Railway Company *v.* Miller.

Practice.—*New Trial, Effect of on Verdict.—How Verdict May be Re-vived.—Special Verdict.*—The granting of a new trial supersedes the effect of the former trial, and destroys the effect of the former ver-dict; and before such verdict can be revived, the order granting the new trial must be reversed, which can only be done by making it appear affirmatively in the record that the order was erroneous, and that it was, or probably was, prejudicial to the complaining party.

Supreme Court Practice.—*Complaining of Ruling Asked for.*—If a party expressly ask that a ruling be made he can not avail himself of that ruling on appeal, although it may be material and is exhib-ited in the record.

Contributory Negligence.—*Special Verdict.—When Sufficiently Found. —Railroad.—Passenger.—Personal Injury.*—Where it appears from a special verdict, in an action for damages sustained while a passen-ger in a railroad car, that plaintiff went into defendant's passenger car for the purpose of being safely carried from T. to I., took a seat therein provided by defendant for passengers, paid the regular fare to the conductor and remained sitting in his seat all the time until the train, running at the rate of thirty miles an hour, was thrown from the track, including the car he was in, which rolled down an embankment and injured him, the fact of freedom from contribu-tory negligence is sufficiently made to appear, without taking into consideration that part of the special verdict stating that he was ex-ercising such care, prudence and caution as prudent persons would, and do, under like circumstances.

Same.—*Special Verdict.*—Whether in such case there is any question

The Louisville, New Albany and Chicago Railway Company *v.* Miller.

of contributory negligence, that part of the special verdict is not wholly improper.

SPECIAL VERDICT.—*Inferential Facts or Conclusions of Fact.*—An inferential fact is an inference or conclusion from the evidentiary facts, and such conclusions are not conclusions of law, but they are inferences, or conclusions of fact.

SAME.—*Should Contain Only Inferential Facts.*—*Conclusions of Law.*—It is the duty of the jury, in making their special verdict, to find only the inferential facts, and the court must declare and apply the law arising thereon.

SAME.—*Inferential and Evidentiary Fact.*—*Practice Where Distinction is Difficult.*—It sometimes happens that facts are so close to the line dividing the inferential facts from the evidentiary that the only safe way is to put them into the special verdict, where they can do no harm in any event.

SAME.—*Inferential and Evidentiary Fact the Same.*—It may sometimes happen that the evidentiary fact and the inferential fact are one and the same thing.

SAME.—*Negligence.*—*Prima Facie Case.*—*Railroad.*—*Personal Injury.*—*Passenger.*—In an action by a passenger for injuries received by reason of the defective condition of the railroad track, where it is found that the cause of injury was the rotten condition of the ties on a three-degree curve, so that they were insufficient to hold the spikes that held the rails to the ties, and the speed of the train around the curve, at the rate of thirty miles an hour, by which the rail was displaced, letting the train off the track, precipitating it down an embankment, injuring plaintiff, a *prima facie* case of negligence is made against the railroad company, the defendant.

RAILROAD.—*Injury to Passenger.*—*Presumption of Negligence.*—*Burden of Proof.*—The burden of overcoming the presumption of negligence arising from evidence of the occurrence of an accident and injury to a passenger is upon the carrier, and this presumption can be overcome only by clear and explicit proof that the accident could not have been avoided by the utmost practical care and diligence.

EVIDENCE.—*Personal Injury.*—*Scope of Inquiry.*—In actions for injuries to body and limb, it is proper, in estimating the damages, to take into consideration the plaintiff's habits of industry, occupation, opportunities for employment, health, prospects of life, and to be governed by ordinary human knowledge and experience as to the age at which he would likely have remained capable of labor, as shown by the evidence.

SAME.—*Opinion Evidence.*—*Nonexpert.*—An opinion can be given by a nonexpert witness as to matters with which he is specially acquainted, but which he can not specifically describe.

The Louisville, New Albany and Chicago Railway Company *v.* Miller.

SAME.—*More Favorable to Complaining Party.*—*Harmless Error.*— Where the evidence complained of as erroneously admitted is more favorable to the complaining party than to his adversary, the ruling, if error, was harmless as to him.

SAME.—*Cross-Examination.*—*Testing Memory.*—*Contents of Written Report.*—Where a witness, a long time after an accident has occurred, has testified all about his examination of the place of the accident, it is not error to ask him, on cross-examination, whether he remembers the contents of a written report he made thereof at the time of the examination, for the purpose of testing his memory of the facts about which he is testifying.

SAME.—*Harmless Error.*—*Supreme Court Practice.*—The admission of improper evidence which could not have harmed the appellant is unavailable error. The Supreme Court must disregard technical and harmless errors.

SAME.—*Objections to, How Brought Into Record.*—*Bill of Exceptions.*— *Motion for New Trial.*—Objections to evidence must be brought into the record by bill of exceptions, and not by embodying the same in the motion for a new trial.

SAME.—*Improper Questions.*—*Unanswered.*—No matter how improper questions may have been, there can be no error if they remain unanswered.

SAME.—*Hearsay.*—*Expressions of Pain.*—Expressions of present pain, and of its locality, are exceptions to the general rule which excludes hearsay evidence.

SAME.—*Stricken Out on Appellant's Motion.*—Appellant can not complain of the admission of evidence which, on his motion, was stricken out of the record.

SAME.—*Striking Out Irresponsive Answer.*—There is no error in striking out an irresponsive answer.

SAME.—*Admission of Incompetent and Immaterial Evidence.*—*When not Cause for Reversal.*—The admission of incompetent and immaterial evidence is not cause for reversal of a judgment which is supported by sufficient material and competent evidence.

SAME.—*Life Tables.*—*Admission in Cases of Permanent Injury.*—Standard life tables may be introduced to show the probable duration of plaintiff's life, on the question of compensation for permanent injury.

SAME.—*Invited Error.*—A party can not complain of error which he has invited.

RECOVERY.—*Personal Injury.*—*Previous Physical Condition.*—*Province of Jury.*—In an action for personal injury, plaintiff's previous physical condition and general health are matters for the jury to consider in measuring the damages.

SUPREME COURT PRACTICE.—*Weight of Evidence.*—*Conflicts.*—The Su-

The Louisville, New Albany and Chicago Railway Company *v.* Miller.

preme Court will not weigh the evidence and determine conflicts therein.

DAMAGES.—*Excessive.*— *When Verdict will not be Disturbed.*—Where there is nothing to induce the belief that the jury must have acted from prejudice, partiality or other improper motives in the assessment of damages, the Supreme Court will not disturb the verdict.

From the Clinton Circuit Court.

*G. W. Kritzinger, E. C. Field, S. O. Bayless* and *C. G. Guenther,* for appellant.

*E. Ritter, H. L. Ritter, C. S. Wesner, D. J. McMath, P. W. Gard* and *J. C. Farber,* for appellee.

McCABE, J.—This was an action by the appellee against the appellant in the court below for damages on account of an alleged personal injury resulting from the alleged negligence of the appellant. Trial by jury, special verdict, assessing the damages at $12,500. Appellant's motion for judgment in its favor on the special verdict was overruled, to which it excepted.

Its motion for a new trial, assigning as reasons therefor many errors in the trial leading up to the verdict, among which were that it was contrary to law and not supported by sufficient evidence, was sustained and a new trial was granted.

On a second trial by jury another special verdict was returned assessing appellee's damages at $10,000. The court rendered judgment upon that verdict over a motion for a new trial.

Such of the errors assigned here as are insisted on in the appellant's brief call in question the action of the trial court in overruling the appellant's motion for judgment on each of the special verdicts, and overruling appellant's last motion for a new trial.

The first question demanding consideration in the natural order is that on overruling the motion for judgment in appellant's favor on the first verdict. Appel-

lant insists that if it was error to overrule that motion and refuse to enter judgment in its favor on that verdict, this court ought to reverse the judgment recovered on the second trial and set aside all the proceedings subsequent to that error and order the trial court to render judgment upon that verdict in favor of the appellant.

In support of this contention, appellant cites *Bisel* v. *Hobbs*, 6 Blackf. 479, where it is said: "So, where a verdict has been set aside and a new trial granted, for reasons not recognized by the law, and upon the second trial, judgment has been rendered in favor of the party obtaining the new trial, that judgment will be reversed, and the party that obtained the first verdict will be restored to his rights under that verdict." Appellant also cites to the same effect *Cummins* v. *Walden*, 4 Black, 307.

The case at bar is wholly differet from those just cited. There the new trial had been granted against the party complaining; here the new trial was granted in favor of and in compliance with the request and motion of the party complaining. In that case the new trial had been granted for a cause unknown to the law—a cause for which the law did not authorize a new trial. In this case all the numerous causes assigned in the motion for the new trial granted were such as the law authorized and required.

Appellant also cites *Brannon* v. *May*, 42 Ind. 92 (102), to the effect that moving for judgment on the verdict did not cut off the motion for a new trial, and on this case seeks to build the theory that, therefore, the motion for a new trial did not waive the motion for judgment on the verdict. That case however does not, as counsel assert, hold that the motion for a new trial is no waiver of the previous motion for judgment on the verdict. All this court there held was that "we think where there is a general verdict, with special findings by the jury in

answer to questions propounded to them, the party against whom the general verdict is returned may move for judgment in his favor on the special findings, notwithstanding the general verdict, without losing his right to move for a new trial in case his motion for judgment should be overruled.''

That is not the question here. The question here is, what effect on appellant's exception to the overruling of its motion for judgment did the action of the trial court have in granting appellant's motion for a new trial. It asks us to set aside and reverse all the proceedings subsequent to the overruling of its motion for judgment on the special verdict. These proceedings are the result of its own motion, because there would have been no new trial if it had not asked for the same. It was said in one of the cases cited by appellant on this point, namely, *Cummins* v. *Walden, supra,* that ''It would be giving the plaintiff too great an advantage, to permit him to take the chance of a verdict, and when it is lost, to relieve him from the verdict and give him a chance with another jury merely because the evidence against his claim was stronger on the first trial than he expected it would be.''

The appellant deliberately took the chances of a more favorable verdict on the second trial than that of the first, when it moved the court to grant it a new trial, and now that the result is a disappointment is no reason why it should be relieved from the consequences of its own act. Even though the first verdict did not find facts enough to support a judgment in favor of the plaintiff, thereby entitling defendant to judgment on motion in its favor on such verdict had it stood by its motion therefor, yet that verdict has been set aside and a new trial granted at its own instance and request. Before appellant's present request for judgment in its favor on that verdict can be granted such verdict must be re-

stored to life, to its condition before it was set aside. Because, as was said by this court in *State, ex rel.,* v. *Templin,* 122 Ind. 235 (238): "The actual granting of a new trial supersedes the effect of the former trial; or wipes out the verdict; no judgment can be rendered upon it," citing Hilliard New Trials, 74; *Edwards* v. *Edwards,* 22 Ill. 121; *Hidden* v. *Jordan,* 28 Cal. 301.

Before that verdict can be relieved of this effect of being wiped out the order granting the new trial producing that effect must be reversed. That can only be done by making it appear affirmatively in the record that the order was erroneous and that it was, or probably was, prejudicial to the party complaining. *Harter* v. *Eltzroth,* 111 Ind. 159; *New* v. *New,* 95 Ind. 366; *Cline* v. *Lindsey,* 110 Ind. 337.

It must further appear that appellant objected or excepted to the order granting the new trial. A ruling without objection or exception thereto by the complaining party can not be available error. *Swan* v. *Clark,* 80 Ind. 57; *Grubbs* v. *Morris,* 103 Ind. 166; *Leyner* v. *State,* 8 Ind. 490; Elliott App. Proced., section 624, and authorities cited.

But instead of showing an objection or exception to the ruling of the court by which the verdict was wiped out, appellant actually invited, asked for, and procured the ruling to be made. Judge ELLIOTT, in his Appellate Procedure, at section 626, says: "A party who expressly asks that a designated ruling be made can not avail himself of that ruling on appeal, although it may be material and may be exhibited by the record. What a party expressly asks can not be made available as error without a violation of the plainest principles of the law." See the numerous authorities cited to this section. We therefore conclude that by procuring the trial court to set aside the first verdict and grant a new

trial, the appellant waived its right to insist on any error in overruling its motion for judgment in its favor on such verdict. For that reason we have not examined the first verdict to see whether appellant's motion for judgment thereon in its favor was well taken or not in the event it had stood by such motion. It might have made the error, if such there was, in overruling the motion available by objection to any action of the court inconsistent with judgment in its favor on such verdict.

The second special verdict contains the following facts:

"That on the 27th day of January, 1890, the plaintiff, at the town of Terhune, entered into a passenger car of the defendant and seated himself upon a seat provided by the defendant for the use of passengers in said car, for the purpose of being carried from this said town of Terhune to the said city of Indianapolis, and then and there paid to the conductor of said cars and train the regular fare or charge of the defendant for carrying a passenger from the said town of Terhune to the said city of Indianapolis; that on said date, at a point about one hundred and seventy-eight feet north of a trestle over what is known as Wilkinson's run, about three-fourths of a mile north of the town of Carmel, in the county of Hamilton, in the State of Indiana, and near the middle of a three degree curve in the track of the defendant's railroad, the left or east rail of said track had been raised by placing blocks of wood, called shims, from one-eighth of an inch to one inch in thickness, on seventeen consecutive ties, under said left or east rail; that from one-fourth to one-third of said ties under said rail were rotten at a point where the spikes were driven into said ties; that all of said ties were more or less decayed or defective; that said spikes had been raised for the purpose of putting said blocks or shims under said rail on said ties, and then driven back into the same holes from which they

had been drawn; that from one-fourth to one-third of said ties under said rail were too rotten to hold said spikes; that on the date aforesaid, and while the plaintiff was a passenger on said train as aforesaid, and sitting in a seat in defendant's car for the purpose of being carried from the said town of Terhune to the said city of Indianapolis, when said train was on the curve aforesaid, at a point one hundred and seventy-eight feet from the north side of said trestle as herein described and located, and while said train was running at the rate of thirty miles an hour, and when the trucks under said train had struck said rail on said seventeen ties at a point one hundred and seventy-eight feet north of said trestle-work over Wilkinson's run, that by the momentum of said train and the rotten condition of said ties, so that they were unable to hold the spikes, and the said rails having been raised by blocks, and the said spikes having been pulled out and driven back in the said holes, by reason thereof, said rail turned outwardly from its proper position to an angle of about forty-five degrees, and thereby caused the car and train upon which the plaintiff was a passenger as aforesaid, to leave the track and be precipitated down an embankment a distance of about ten feet, upsetting and turning the car in which the plaintiff was then seated on its side and throwing the plaintiff from his seat on the left side of said car, and about the center, lengthwise thereof, where he was seated in said seat, so provided by defendant for the use of its said passengers, across the car, and to the opposite side thereof, and to the front end of said car, thereby, and by reason of the facts herein stated and without any fault on his part, the plaintiff's life was imperiled, and he had suffered severe and permanent physical injuries in his head, arm, legs and body, and was thereby rendered unable to perform physical or manual labor, and thereby caused to suffer great pain

and anguish in both body and mind; that the plaintiff seated himself upon a seat in said car that had been provided by said defendant for passengers, on entering said car at said town of Terhune; and remained sitting in said seat until thrown therefrom, by the said car leaving said track of defendant as aforesaid, and that during all the time from said plaintiff's entering said defendant's car to the occurrence of said accident and derailment, the plaintiff was exercising such care and caution, and prudence as prudent persons would and do exercise under like circumstances, namely, by remaining seated as aforesaid, until thrown therefrom as aforesaid; that the plaintiff still suffers great pain from said injuries and will do so for the remainder of his life; that at the time of said injuries the said plaintiff was forty-five years of age, and prior thereto, and up to the time of said accident was a man of fairly good health, and able to do all kinds of manual and physical labor, and to transact and carry on an extensive business, such as buying and handling large quantities of corn, wheat, oats, hay, staves, railroad ties, and do a general mercantile business, such as is carried on in any country store buying and selling dry goods, hats, shoes, hardware and groceries; that since he has received said injuries, and on account of said injuries, he has been and still is unable to move about or go around without the assistance of crutches, and has during all of that time required the care and attention of an attendant to enable him to arise from his chair or to seat himself, or to move about with safety, and has been rendered unable to give his personal attention to his said business by reason of said injuries.

"Now, if on the foregoing facts, the plaintiff is entitled to recover against the defendant, then we find for the plaintiff and assess his damages at ten thousand dollars.

"And if, upon the facts aforesaid, the defendant is entitled to recover, then we find for the defendant.

"ROBERT CARRICK, Foreman."

The first objection urged against this verdict is that it fails to show that the appellee was free from contributory negligence, and that, therefore, the appellant's motion for judgment in its favor thereon ought to have been sustained. It is the law that the plaintiff in such cases must prove, and it is the right of the defendant charged with negligence to insist on proof by satisfactory evidence, that he did not contribute to the injury by negligence on his part. This proof, in some form, constitutes a part of the plaintiff's cause of action, without which there can be no recovery. *Toledo, etc., R. W. Co.* v. *Brannagan, Admx.,* 75 Ind. 490; *Pennsylvania Co.* v. *Myers, Admx.,* 136 Ind. 242; *Evansville, etc., R. W. Co.* v. *Krapf,* 36 N. E. Rep. 901.

It is also settled law, as contended by the appellant, that if the special verdict fails to find any fact essential to entitle the plaintiff to judgment then the defendant's motion for judgment should be sustained, unless the case is one where the burden is upon the defendant. *Dixon* v. *Duke,* 85 Ind. 434; *Trittipo* v. *Morgan,* 99 Ind. 269; *Waymire* v. *Lank,* 121 Ind. 1.

The burden was upon the plaintiff in this case. The question then remains, did the special verdict find facts sufficient to show the absence of contributory negligence in the appellee? It finds on that subject that on the 27th day of January, 1890, he, at the town of Terhune, entered into a passenger car of the defendant and seated himself upon a seat provided by the defendant for the use of passengers in said car, for the purpose of being carried from said town of Terhune to the city of Indianapolis, and then and there paid the conductor of said cars and train the regular fare, or charge, for carrying a

passenger from said town of Terhune to said city of Indianapolis; that at said date, at a point on said road (describing it) toward Indianapolis, and while said train was running at the rate of thirty miles an hour (describing the defective condition of the ties and track), thereby caused the car and train upon which the plaintiff was a passenger as aforesaid, to leave the track and be precipitated down an embankment * * * upsetting and turning the car in which plaintiff was then seated on its side and throwing the plaintiff from his seat on the left side of said car * * * across the car (describing the injuries thereby inflicted on him); * * * that he * * * remained sitting in said seat until thrown therefrom by said car leaving said track of defendant as aforesaid, and that during all the time from said plaintiff's entering said defendant's car to the occurrence of said accident and derailment, the plaintiff was exercising such care and caution and prudence as prudent persons would and do exercise, under like circumstances, by remaining seated as aforesaid, until thrown therefrom as aforesaid.

It is contended that so much of the above finding as states that appellee at the time was exercising care and caution is not a finding of facts, but is a statement of a mere conclusion of law. If it is, then appellant's contention must prevail, that such conclusion of law must be disregarded by the court in declaring the law arising upon the facts found in the verdict. *Dixon* v. *Duke, supra; Pittsburgh, etc., R. W. Co.* v. *Spencer*, 98 Ind. 186; *Indianapolis, etc., R. W. Co.* v. *Bush*, 101 Ind. 582; *Pittsburgh, etc., R. W. Co.* v. *Adams*, 105 Ind. 151; *Indiana, etc., R. W. Co.* v. *Barnhart*, 115 Ind. 399; *Chicago, etc., R. W. Co.* v. *Burger*, 124 Ind. 275.

If, however, the verdict states all the facts essential to

a recovery after eliminating such alleged conclusions of law, it will be sufficient, and the motion for judgment for the defendant thereon ought to be overruled. *Pittsburgh, etc., R. W. Co.* v. *Adams, supra; Indiana, etc., R. W. Co.* v. *Finnell,* 116 Ind. 414; *Branson* v. *Studabaker,* 133 Ind. 147.

It has long been the established rule in this State that an exception to the conclusions of law stated on a special finding of facts admits that the facts have been fully and correctly found. *Hartman* v. *Aveline,* 63 Ind. 344; *Robinson* v. *Snyder,* 74 Ind. 110; *Helms* v. *Wagner,* 102 Ind. 385; *Wynn* v. *Troy,* 109 Ind. 250; *Blair* v. *Blair,* 131 Ind. 194.

The only difference between a special verdict and a special finding is that one is found by the jury and other by the court; and the further difference, that the law is declared in the one case by written statements or conclusions in advance of the judgment, and in the other it is declared by the rendition of the proper judgment upon the special verdict; in the one case objection to the conclusions of law is made by an exception thereto after their statement in writing, and in the other the objection is made to the conclusion or declaration of law on the facts found in the special verdict by objecting to the rendition of the judgment on the verdict in favor of the adverse party and asking for judgment thereon in favor of the objector and excepting to the refusal thereof. *Hoosier Stone Co.* v. *McCain, Admr.,* 133 Ind. 231; *Pittsburgh, etc., R. W. Co.* v. *Spencer,* 98 Ind. 186.

The same principle applies to these exceptions that does on an exception to conclusions of law on a special finding, namely, such objection admits, for the purposes thereof, that the facts have been fully and correctly found in the special verdict. *Hoosier Stone Co.* v. *McCain,*

*Admr.*, *supra; Pittsburgh*, etc., *R. W. Co.* v. *Spencer,*
*supra.*

It therefore follows that for the consideration of the
question whether the special verdict shows the absence
of contributory negligence in the appellee, it is admitted
that there were no other facts, acts or omissions on the
appellee's part touching the accident than those set forth
in the verdict.   That being true, all of the acts or omis-
sions of the appellee in connection with the accident are
comprised in the narration that he went into appellant's
passenger car to be safely carried from Terhune to Indi-
anapolis, took his seat therein, provided by appellant for
passengers, paid the regular fare to the conductor, that
he remained sitting in his seat all the time until the
train, running at the rate of thirty miles an hour, was
thrown from the track, including the car he was in,
which rolled down an embankment and injured him.

This being all that was done or omitted to be done by
the appellee in connection with the accident, the court
was able to declare, as matter of law, that he was not
guilty of contributory negligence, without taking into
consideration that part of the special verdict stating that
he was exercising such care, prudence and caution as
prudent persons would, and do under like circumstances.

In a similar case, where the complaint stated that the
plaintiff was lawfully a passenger in defendant's passen-
ger car, the giving way of a railroad bridge precipitated
him into the river below, inflicting on him the injuries
complained of, it was held that all presumption of negli-
gence on his part is rebutted by these averments.   *Bed-*
*ford*, etc., *R. R. Co.* v. *Rainbolt*, 99 Ind. 551.

In another such case it is said there is no question of
contributory negligence.   *Louisville*, etc., *R. W. Co.* v.
*Snyder*, 117 Ind. 435.

But that part of the verdict is not wholly improper.   It

tells how that care and caution were exercised, namely: "by remaining seated as aforesaid until thrown therefrom as aforesaid." That was a fact and not a conclusion of law.

Appellant's learned counsel cite and quote from *Conner* v. *Citizens' Street R. W. Co.*, 105 Ind. 62, in support of their contention that the matter above referred to, as well as many others in the special verdict, are either conclusions of law or such conclusions of fact as a jury is unauthorized to state. In support of their contention they quote one of the paragraphs of the special verdict, with the comments of this court thereon, as follows:

" '12th. That the conduct of plaintiff on the occasion of the injury was ordinarily prudent and cautious under the circumstances, and that he did not *wholly* contribute to said injury by any fault * on his part, but that said injury was caused mostly by the agent of the defendant, driver of said car.' In determining the legal value and quality of the facts found, the paragraph above set out is not to be regarded as a finding of facts. It contains nothing more than inferences or conclusions, drawn by the jury upon the precedent facts, and upon these it was not the province of the jury, in their special verdict, either to express opinions or draw conclusions."

What this court really meant by the language quoted by appellant's counsel is shown further on in the opinion in regard to the same point where it is said: "A civil case can not be conceived of in which it is the province of the jury, by special verdict, to determine the facts and also to draw inferences in the nature of legal conclusions upon the facts found."

The language quoted by appellant's counsel from that case had reference to that part of the paragraph of the special verdict that stated that the plaintiff in that case had not wholly contributed to said injury by any fault

or negligence on his part, but was mostly caused by the defendant. Further on the opinion says: "Concede that in some sense negligence is, as it is sometimes said to be, a mixed question of law and fact, it can not be so after the facts are ascertained. In cases involving negligence, as in all other civil cases, a point must be reached at some time when the facts and the law are to be considered separate and distinct, when the litigants have the right to invoke the judgment of the court and require it to determine whether, upon the. facts as they are agreed to be, the law declares that negligence intervened." The court, eliminating the unauthorized conclusions of law, decided that the facts found showed that the defendant in that case was guilty of negligence and that the plaintiff was without contributory fault.

All that is said in the case against the right of the jury to find conclusions of fact, so much relied on by the appellant here, was held by this court to be unsupported by authority, and was disapproved in *Cincinnati, etc., R. W. Co.* v. *Grames*, 136 Ind. 39.

The statement at another place in the special verdict that the appellee "was without fault on his part" is a conclusion of law.

In *Terre Haute, etc., R. R. Co.* v. *Brunker*, 128 Ind. 542 (548), this court. said: "The words 'without any fault on his part,' we think, may be properly stated in the verdict. It is necessary to allege in the complaint that the plaintiff is without fault; and no harm can result from the jury stating in their special verdict that the injury occurred without plaintiff's fault, and if it be a mere conclusion drawn from the facts it can make no difference in this case, since the facts upon which such conclusion is based are also stated, and from which the court was authorized to draw the same conclusion, viz.: that the plaintiff was without fault, and we think the facts

found fully justified the court in drawing such conclusion and rendering judgment for appellee.''

We are, therefore, of opinion that the special verdict stated facts enough to show that the appellee was free from contributory fault or negligence.

It is also contended that the verdict is bad because it states conclusions; for instance in that it states that the plaintiff suffered severe permanent physical injuries, and thereby was rendered unable to perform physical labor, without stating any facts upon which this conclusion is based. And a like objection is made to almost every fact stated in the special verdict.

This contention, if upheld, would require all the evidentiary facts to be found by the jury; that is, it would require them to embody in their special verdict all the evidence. This court has held again and again that the jury has no right to so return the evidence, and if so returned it is valueless and of no force. *Whitworth* v. *Ballard*, 56 Ind. 279; *Gordon* v. *Stockdale*, 89 Ind. 240; *Jones* v. *Baird*, 76 Ind. 164; *Pittsburgh, etc., R. W. Co.* v. *Adams, supra; Indianapolis, etc., R. W. Co.* v. *Bush, supra; Tousey* v. *Lockwood*, 30 Ind. 153; *Davis* v. *Franklin*, 25 Ind. 407; *Smith* v. *James*, 131 Ind. 131; *Locke* v. *Merchants' Nat'l Bank*, 66 Ind. 353.

In the latter case, at page 362, it is said: ''It thus appears that the facts involved in the finding of a special verdict are divided into two classes—evidentiary facts and inferential facts; that it is the duty of the jury to consider the evidentiary facts, but to find the inferential facts; and if the special verdict shows upon its face that the jury found the evidentiary, but not the inferential facts, the verdict is ill, because it shows that the jury ought to have found other facts, viz.: the inferential. It has often been decided by this court that the jury should not find the evidence, but the facts; by which is meant

the inferential facts.'' An inferential fact is an inference or conclusion from the evidentiary facts; it is an inference or conclusion from evidence. This being true, such conclusions are not conclusions of law, but they are inferences or conclusions of fact. It is, therefore, not necessary to set out or return the evidence from which the jury draw or infer such facts. Such inferences or conclusions being matters of fact purely, and as the jury are the exclusive judges of the facts they alone can determine what are the proper and legitimate inferences or conclusions to be drawn from the evidentiary facts. That is the reason why it neither helps nor harms their special verdict to embrace the evidentiary facts therein further than to needlessly encumber the record, thereby inducing confusion.

It sometimes happens that facts are so close to the line dividing the inferential facts from the evidentiary facts that the only safe plan is to put them into the special verdict, where they can do no harm if they should turn out, in the opinion of the court, to be evidentiary facts, and where their absence might be fatal if they should turn out to be inferential facts. It may sometimes happen that the evidentiary fact and the inferential fact are one and the same thing; for instance, in a suit on a promissory note where there is an answer of general denial but no answer denying the execution of the note, the note is both the evidentiary fact and the inferential fact, and must go into the special verdict.

It is true, as appellant contends, that the jury, in a special verdict, have nothing to do with the questions of law involved in the case, but they must find only the inferential facts, and the court must declare and apply the law arising upon such facts. Applying these principles to the special verdict last returned, the objections thereto on account of its containing inferences or conclusions

drawn by the jury from the evidentiary facts, can not be maintained.

It is next objected that the verdict does not find facts enough to warrant the conclusion or declaration of law thereon by the court that the appellant had been guilty of negligence.

The court, by the rendition of the judgment, necessarily declared the law arising upon the facts found to be that appellant had been guilty of negligence.

The rotten condition of the ties on a three-degree curve so that they were insufficient to hold the spikes that held the rail fast to the ties, the train running around the curve at the rate of thirty miles an hour, by which the rail was pressed out of place, letting the train off the track, precipitating it down an embankment, injuring appellee,—constitutes, *prima facie*, a case of negligence against the appellant.

Because, as was said in *Bedford, etc., R. R. Co.* v. *Rainbolt, supra,* at p. 556: "While a carrier does not, in legal contemplation, warrant the absolute safety of passengers, it is yet bound to the exercise of the utmost diligence and care, * * and if the jury should find, from the evidence, that the plaintiff was injured by an accident arising from a defect in the road or bridge of said company, without any fault on his part, the legal presumption is that the injuries of the plaintiff were caused by the negligence of the defendant."

And as was said in *Louisville, etc., R. W. Co.* v. *Snyder, supra,* at page 437: "The burden of overcoming the presumption of negligence arising from evidence of the occurrence of an accident and injury to a passenger, is upon the carrier." To the same effect are *Cleveland, etc., R. W. Co.* v. *Newell,* 75 Ind. 542; *Cleveland, etc., R. R. Co.* v. *Newell,* 104 Ind. 264; *Pittsburgh, etc., R. R. Co.* v. *Williams,* 74 Ind. 462; *Terre Haute, etc., R. R. Co.*

v. *Buck, Admx.*, 96 Ind. 346; *Louisville, etc., R. W. Co.* v. *Jones*, 108 Ind. 551; *Anderson* v. *Scholey*, 114 Ind. 553; *Louisville, etc., R. W. Co.* v. *Thompson, Admr.*, 107 Ind. 442; *Ohio, etc., R. W. Co.* v. *Voight, Admr.*, 122 Ind. 288 (294).

This presumption must be overcome by clear and explicit proof on the part of the carrier that the accident could not have been avoided by the utmost practical care and diligence. *Cleveland, etc., R. W. Co.* v. *Newell, supra; Cleveland, etc., R. R. Co.* v. *Newell, supra; Louisville, etc., R. W. Co.* v. *Jones, supra; Anderson* v. *Scholey, supra; Louisville, etc., R. W. Co.* v. *Thompson, Admr., supra; Terre Haute, etc., R. R. Co.* v. *Buck, Admx., supra.*

There is no fact found in the special verdict countervailing or overcoming the presumption of negligence in appellant arising from the facts found. Therefore, the special verdict sufficiently shows negligence on part of the appellant. It is proper to be observed that most of the objections urged to the special verdict by appellant have been directed against the first special verdict returned in the case; but as it is assigned for error that the trial court overruled appellant's motions for judgment in its favor, both on the first and on the second special verdict, we have deemed it proper to notice all the objections urged in argument that were at all applicable to the second verdict.

In support of the assignment of error in overruling appellant's motion for a new trial, a great number of rulings in the reception of evidence are urged upon our consideration for the reversal of the judgment. A number of questions and their answers were objected to by appellant seeking to prove what experience the appellee had had in the purchase and sale of dry goods, groceries, staves, wheat, corn, oats and such stuff as was raised in

that immediate vicinity and the quantities purchased by him; also, appellee's physical ability and health previous to the injury received by him; also, his habits of industry. The objections urged by appellant's learned counsel in their able and exhaustive brief are as follows: "The objections to this class of questions proceed upon the ground that no value can be placed upon one man's experience as against another for the purpose of recovering damages in this class of cases; that the use of a man's experience, the profits arising from such use, the amount of business transacted by him for any period of time preceding the injury, involve a purely speculative value. * * * All of these inquiries touching the industrious habits, ability or experience of Miller called for mere conclusions, which belonged exclusively to the court to find upon the facts found and returned by the jury in their special verdict."

It was held by this court in *Ohio, etc., R. W. Co.* v. *Voight, Admr., supra,* at page 269, that it was proper in estimating the damages in such a case for the jury to take into consideration the plaintiff's habits of industry, occupation, opportunities for employment, health, prospects of life, and be governed also by ordinary human knowledge and experience as to age at which he would likely have remained capable of labor, as shown by the evidence.

To the same effect is *Cleveland, etc., R. R. Co.* v. *Newell, supra.*

An answer to the objection that such evidence is the mere conclusion or opinion of the witnesses, is found in *Carthage Turnpike Co.* v. *Andrews,* 102 Ind. 138 (142), where it is said: "That a nonexpert may give an opinion at all, is the rule of necessity. He must in all cases, so far as possible, state the facts upon which he bases his opinion. When the case is one in which all the facts

can be presented to the jury, then no opinion can be given, because the jury are as well qualified as the witness to form a conclusion. But there are cases where the witness can not put before the jury, in an intelligible and comprehensible form, the whole ground of his judgment or opinion. When questions as to the conditions of the mind and body are the questions in issue, there are often many things in the acts, deportment and appearance of the party which create a fixed and reliable judgment in the mind of the observer that can not be conveyed in words to the jury. * * * 'So an opinion can be given by a nonexpert as to matters with which he is specially acquainted, but which can not be specifically described.' * * * 'Nonexperts may give their opinions on questions of identity, resemblance, apparent condition of body or mind, intoxication, insanity, sickness, health, value, conduct and bearing, whether friendly or hostile, and the like.' ''

Regarding the testimony as we think it should be regarded, it is brought within the general rule that nonexpert witnesses may give their opinions if they state, as far as possible, the facts and observations upon which they are based.

That nonexpert witnesses may give their opinions in the class of cases we have mentioned, is well settled by the adjudications in this court. *House* v. *Fort*, 4 Blackf. 293; *City of Indianapolis* v. *Huffer*, 30 Ind. 235; *Benson* v. *McFadden*, 50 Ind. 431; *Holten* v. *Board, etc.*, 55 Ind. 194; *Coffman* v. *Reeves*, 62 Ind. 334; *[State, ex rel.*, v. *Newlin*, 69 Ind. 108; *Mills* v. *Winter*, 94 Ind. 329; *Louisville, etc., R. W. Co.* v. *Berkey*, 136 Ind. 591.

Doctor Fletcher, an expert witness in surgery and medicine, introduced by appellee, after having testified to making three several careful examinations of appellee, and making inquiries of him with a view to learn

the extent and character of the injuries now complained of, and after detailing these facts in evidence before the jury, he was asked the following question:

"Now, Doctor, taking the examination that was made as to the condition of Miller, and all the information you have by examining him, and all the tests you have made, state your opinion based upon these facts, all the inquiries you have made, all the examinations you have made, state whether or not the disease he has, whatever it may be, is progressive or not, and whether or not, in your judgment, and if it is likely to be permanent, and if permanent, to what extent, and so on?"

Appellant's objection to the question being overruled, the witness answered as follows: "Well, I could only judge the future by the past. Taking his own description of his symptoms, the tests which were made brought to light many peculiar and antagonistic symptoms, so that I would at least not be able to determine the location, or character, or extent of the disease. There seemed to be no motor paralysis, at least we did not discover any at the examination."

While we think, taking the doctor's whole evidence together with the question, the question had reference to the facts which he had detailed before the jury, but, supposing the question called for an opinion based on facts not before the jury, on the mere hearsay statements of strangers, as is contended by appellant's counsel, and yet the answer was more favorable to appellant than to appellee, and therefore the error, if error there was in overruling the objection, was utterly harmless.

Doctor Comingore, another medical expert witness, being called and examined in chief by the appellant, had testified as to an examination he had made of the plaintiff shortly after the injury, and that he thought he had made a report of that examination to Doctor Davis, and,

on cross-examination by the appellee, was asked the following question: "Do you remember now the contents of that report as you made it to him in reference to the extent of the injuries and his then present condition?"

This question was objected to on the ground that it was immaterial, that the report was in writing and oral evidence of its contents was inadmissible, and that its contents were not competent evidence because mere hearsay or statements of a person not a party to the suit and not under oath.

The objection having been overruled, the witness answered as follows: "I remember the substance of that report. It was a brief one and it was negative, and it stated, according to my recollection, that I found nothing to convince me that there was any serious injury, something of that kind." There was no evidence that the report referred to was in writing further than what may be inferred from the testimony already given above.

Whether such a question was a proper one on cross-examination we need not decide, but conceding, without deciding, that it was improper, the answer was harmless because it was in favor of the appellant and against the appellee. Conceding that a state of facts might exist as that such an answer might, though favorable to the objecting party, prejudice the witness and thereby harm such party, yet nothing of the kind appears in the record. Indeed, it is nowhere claimed in the elaborate brief of appellant that the answer harmed it. Furthermore the question did not call for the objectionable part of the answer. It only called for the fact whether the witness then remembered the contents of the report. When he answered that he did the answer was complete. Appellant took no steps to eliminate the uncalled for part of the answer from the record. We can not say that on cross-examination of a witness, who had testified

all about such examination, a long time after it had occurred, a question whether he remembered the contents of a report he had made thereof at the time, for the purpose of testing his memory of the facts about which he is testifying was error.

Had he been stopped when he answered that he did so remember, there would not have been the slightest error, and it was the right and duty of appellant, if it did not feel willing to trust to the memory of its own witness as to the contents of a report he had made, if it was in fact in writing, to ask the court to stop the witness when he had answered the question, or move to strike out so much of the answer as was not responsive to the question, and in case of an adverse ruling to take exceptions.   Appellant did neither of these things.   We would be justified in holding that appellant had not taken the steps requisite to make the ruling available as error, even if the answer was harmful.   But the answer being totally harmless there was no available error in any possible view of the question.   The statute provides that this court "shall not regard technical errors or defects, or exceptions to any decision or action in the court below which did not in the opinion of the Supreme Court prejudice the substantial rights of the defendant."   R. S. 1881, section 1891 (1 Burns R. S. 1894, section 1964).

The admission of improper evidence, which could not harm the defendant, has been held by this court to be unavailable error in *Powers* v. *State*, 87 Ind. 144; *Binns* v. *State*, 66 Ind. 428;  see also Elliott's App. Proc., section 292, and authorities there cited.

The following questions and answers of the several witnesses named were objected to by appellant:

To O. H. Six:   "You may state what, if any, complaints he was making at that time.   Answer.   I asked him if he could walk.   I said if you can get up on your feet we will try and carry you out."

To Stoker: "If you have ever noticed any peculiarity in his lying down or getting up, or moving himself around, or changing positions, you may state to the jury what peculiarity that was.".

To Summers: "If you observed any expressions of his face different from what it was prior to his hurt describe it to the jury. Answer. I just asked him how he felt; he said he didn't know; he said he was all broke up; he said he would sit up part of the time and then lay down, trying to get rest first one place and then another. *   *   * I would address him as to how he was feeling and he would say about the same. When I would go home to my meals I would ask him that question, and he would say just about the same."

To Spencer: "What, if anything, did he say as to his sufferings, if you can use his language? Again, what did he then say, if anything, as to his suffering or pain at that time? Answer. He said he was feeling very sore; his pains hurt him a great deal more than they did the day before."

As to the questions to the witness Stoker, and that to the witness Six, and the first question to the witness Spencer, the answers are not stated by counsel for appellant, but they refer us to the record for the same, but on examining the record at that point we find nothing but the question, and that is only contained in the motion for a new trial. Matter of this kind can not be brought into the record by embodying the same in the motion for a new trial. It only can be by a bill of exceptions or order of court. *Indianapolis, etc., Mfg. Co.* v. *First Nat'l Bank, etc.*, 33 Ind. 302; *Skillen* v. *Skillen*, 41 Ind. 122; *Hopkins* v. *Greensburg, etc., Tp. Co.*, 46 Ind. 187; *Vawter* v. *Gilliland*, 55 Ind. 278; *Hyatt* v. *Clements*, 65 Ind. 12; *Clouser* v. *Ruckman, Admr.*, 104 Ind. 588.

Besides, if there was no answer to the questions, there

could be no error, no matter how improper the questions may have been. Counsel have not cited us to any answer to the questions, and we have been unable to find any in the record, which contained nearly eleven hundred pages of printed matter. There was no error in overruling the objection to the other questions and answers. The ground of the objection to these questions and answers urged here is that they describe no pain and locate no injury. The information that his pains hurt him a great deal more than they did the day before, left the subject in full uncertainty, etc.

In *Cleveland, etc., R. R. Co.* v. *Newell, supra,* at p. 269, it was said: "Where, however, it becomes important to illustrate the physical or mental condition of an individual, either at the time an injury is received, or from thence to the time of an inquiry as to its severity, effect and nature, we think expressions or declarations of present existing pain or malady, whether made at the time the injury is received or subsequent to it, are admissible in evidence. *Carthage Turnpike Co.* v. *Andrews,* 102 Ind. 138; *Town of Elkhart* v. *Ritter,* 66 Ind. 136; *Howe* v. *Plainfield,* 41 N. H. 135; *Towle* v. *Blake,* 48 N. H. 92; *Kennard* v. *Burton,* 25 Me. 39; *Hyatt* v. *Adams,* 16 Mich. 180; *Elliott* v. *Van Buren,* 33 Mich. 49, 20 Am. Rep. 668; *Brown* v. *New York Cent. R. R. Co.,* 32 N. Y. 597; *Matteson* v. *New York Cent. R. R. Co.,* 35 N. Y. 487; *Johnson* v. *McKee,* 27 Mich. 471; *Earl* v. *Tupper,* 45 Vt. 275. Expressions of present existing pain, and of its locality, are exceptions to the general rule which excludes hearsay evidence. They are admitted upon the ground of necessity as being the only means of determining whether pain or suffering is endured by another. Whether feigned or not, is a question for the jury. Such declarations and expressions are competent, regardless of the person to whom they are made."

The Louisville, New Albany and Chicago Railway Company *v.* Miller.

To the same effect is *Louisville, etc., R. R. Co.* v. *Snyder, supra.*

An objection was made to the following question and answer of the witness, on behalf of appellee, O. H. Six, was objected to, the overruling of which objection is urged here by appellant as error: "You may tell the jury the condition of the road bed. Answer. Well it was in a very poor condition."

The appellant then moved the court to strike the answer "from the record of the cause because it is a conclusion," and the court sustained the motion. So we need not, and do not, decide whether the objection was well taken or not, since the answer, being stricken out of the record, could not harm the appellant, even if inadmissible as evidence.

The same is true of the question to Coroner Dove, objection thereto and the motion to strike out the answer being sustained.

An erroneous ruling as to the admission or exclusion of evidence may be cured by a change of such ruling before the evidence is closed. *Gebhart* v. *Burkett*, 57 Ind. 378.

Hall was a witness for appellant, being its chief engineer, and in answer to the question: "What was the condition of the ties?" on cross-examination, over appellant's objection, said: "The ties are in the condition that we find them generally in all parts of the track previous to renewals."

The court sustained appellee's motion to strike out this answer, which ruling is urged here as error. The answer was not responsive to the question, and did not furnish any information called for by the question, and was more an argument than evidence. There was no available error in striking out the answer.

On further cross-examination the witness was asked:

"What percentage of the ties were put back in the track? Answer. It would be mere guess work.

"Question. Well, you can guess. Answer. I should guess between one-third and one-half."

Both questions and the answer were objected to, and a motion to strike out the answer for the reason that it is simply a guess of the witness and not confined to the particular rail was overruled and excepted to. This ruling is urged here as error. As we have already seen, an error to be available as cause of reversal must be material and substantial. Elliott App. Proced., section 292, and authorities there cited.

The witness had already testified he had charge and supervision of the entire track and that he arrived at the scene of the disaster about 5 or 6 o'clock of the evening of the day on which it occurred and most of the ties had been put back into the track after he got there that evening. The evident meaning of his answer was that he had not made a careful note of the number of ties that were put back, but that his judgment and recollection were that it was one-third to one-half.

Now, we are unable to perceive what difference it could make to either party to the suit whether one-third, one-half, none or all of the ties that had been torn up in the wreck were put back into the track again. Therefore, even if the evidence of the witness was purely a guess as to the number of the ties put back into the track, and therefore incompetent because it was a guess and not his knowledge, yet the evidence was so clearly immaterial that it is impossible to see how it could have harmed the appellant. Its counsel have failed to point out any injury which could have been caused by such evidence. Immaterial evidence, when objected to, ought always to be excluded. But whether a judgment, which is

supported by competent and material evidence, shall be reversed on account of the court having received such immaterial evidence presents quite a different question.

It has been held by this court that the admission of incompetent evidence, which is also material, is reversible error. *Baker* v. *Dessauer,* 49 Ind. 28; *Thompson* v. *Wilson,* 34 Ind. 94; *Barnett* v. *Leonard,* 66 Ind. 422.

But it has also been held by this court that the admission of incompetent evidence, which is also immaterial, is not such an error as will furnish cause for the reversal of a judgment which is supported by sufficient material and competent evidence in the case. *Parmlee* v. *Sloan,* 37 Ind. 469.

There was, therefore, no material error in receiving and refusing to strike out the evidence mentioned.

It is further contended that the court erred in admitting in evidence over appellant's objection a table of life expectancy. The reasons urged here against the admissibility of such evidence are that it is not applicable where damages are sought to be recovered for personal injuries received where the injured person is living, and are only applicable where death results from the injury; that the tables offered, too, were not properly authenticated and no foundation had been laid for their introduction.

Standard life tables may be introduced to show the probable duration of the plaintiff's life on the question of compensation for permanent injury; or, in case of death, the deceased's expectation of life at the time of the accident. *Scheffler* v. *Minneapolis, etc., R. W. Co.,* 32 Minn. 125, 19 Am. & Eng. R. R. Cas. 173; *Coates, Admr.,* v. *Burlington, etc., R. W. Co.,* 62 Iowa 487, 15 Am. & Eng. R. R. Cas. 265; *Sauter, Admr.,* v. *New York, etc., R. R. Co.,* 66 N. Y. 50; 5 Am. & Eng. Encyc. Law 67; *Shover, Admr.,* v. *Myrick,* 4 Ind. App. 7.

In the latter case a full and valuable discussion of the

question will be found, and a great many of such tables are referred to as are regarded standard and authoritative by the courts, among which are the Carlisle tables, the ones introduced in this case. And it is there said that the courts take judicial knowledge of such standard tables. Those tables were read from the "Encyclopædia Britannica" in this case. In *Donaldson* v. *Mississippi, etc., R. R. Co.*, 18 Iowa 280, the Carlisle tables were held to be admissible in evidence. To the same effect are *Walters* v. *Chicago, etc., R. R. Co.*, 41 Iowa 71; *Central R. R. Co.* v. *Crosby*, 74 Ga. 737; *McKeigue, Admx.*, v. *City of Janesville*, 68 Wis. 50; *Central R. R. Co.* v. *Richards*, 62 Ga. 306.

In Iowa it has been held that the "Encyclopædia Britannica" containing the Carlisle Life Tables may be introduced in evidence in a proper case. *Worden* v. *Humeston, etc., R. W. Co.*, 76 Iowa 310. There was no error in receiving in evidence such tables.

Complaint is made of the action of the court in allowing appellee's counsel to read in the hearing of the jury the same tables found in a case in 118 U. S. R. 500. But that came about in this way: Counsel for appellant, in support of their objection to the introduction of the life tables, read parts of the case just mentioned in the hearing of the jury. Appellee's counsel in response thereto read over appellant's objection from another part of the same case, the matter already mentioned.

If there was error in this action of the trial court on which we intimate no opinion, it was first invited by the appellant. We have already seen that a party can not successfully complain of error he invites.

A very ingenious and vigorous argument is made by appellant's able counsel in conclusion to demonstrate that appellee's evidence as to the character of his injuries is overwhelmingly contradicted so that the evi-

dence does not sustain the finding in his favor, or that the amount of damages assessed is grossly excessive.   The main evidence relied on to produce this result is the appellee's sworn application for a pension on account of disability which counsel claim was total, resulting from his several years' service in the Union army of the war of the rebellion.   Counsel contend with great emphasis and warmth that if appellee was totally disabled to perform manual labor that disability could not be enlarged by the accident to him on appellant's railroad.  He made the application for pension in 1889, and his affidavit stated, ''that he is now, as above, disabled from obtaining his subsistence by manual labor.''

It is a serious mistake to suppose the import of that language to be a total disability to follow any pursuit or livelihood.   The appellee, in his testimony, does not seem to have made any attempt to conceal the extent of his ailments and disability resulting from his service in the army, but stated them fully as they appear to have existed before he received the injury complained of.

Counsel for appellant say of this branch of the case: ''He (appellee) sues and seeks to recover against appellant for the total loss of a splendid, sound, robust, undiseased physical system, totally wrecked and ruined, and yet a month before the accident he had stamped this same physical organization with an incurable spinal disease with a total disability and absolute incapacity to earn his subsistence by manual labor.''

The complaint was not that broad, but if it had been it was not essential to a recovery that he should prove that he was sound and free from all ailments existing prior to receiving the injury complained of.   He was entitled to recover all the damages he proved he had sustained by the accident.   The condition of his previous physical constitution and general health were matters

proper to be considered by the jury in measuring the damages.

In *Louisville, etc., R. W. Co.* v. *Snyder, supra,* this court laid down the true rule in such cases thus: "The fact that the appellee was suffering from Bright's disease * does not impair his right of recovery. The rule is this: 'Where a disease caused by the injury supervenes, as well as where the disease exists at the time of the injury and is aggravated by it, the plaintiff is entitled to full compensatory damages.'" Citing *Ohio, etc., R. R. Co.* v. *Hecht,* 115 Ind. 443; *Louisville, etc., R. W. Co.* v. *Wood,* 113 Ind. 544; *Indianapolis, etc., R. W. Co.* v. *Pitzer,* 109 Ind. 179; *Terre Haute, etc., R. R. Co.* v. *Buck, supra; Ehrgott* v. *Meyer,* 96 N. Y. 246; *Jücker* v. *Chicago, etc., R. W. Co.,* 52 Wis. 150; *Denver, etc., R. W. Co.* v. *Harris,* 122 U. S. 597; *Lake Shore, etc., R. W. Co.* v. *Rosenzweig,* 113 Pa. St. 519; *Houston, etc., R. W. Co.* v. *Leslie,* 57 Texas, 83.

It may be conceded that there is some conflict between the appellee's application for a pension and other parts of the evidence, and yet the evidence that tends to support the finding is amply sufficient to uphold the verdict. This proposition is not controverted by appellant's counsel. But they seem to suppose that as the conflict arises out of a statement under oath by appellee, and introduced in evidence by appellant, it is unlike ordinary conflicts in evidence; that it ought to have the effect to destroy the appellee's whole evidence, and justify us in invading the domain of the jury to weigh the evidence and decide conflicts therein and determine what evidence ought to have been believed by the jury and what ought to have been disbelieved. If we can do so in this case no reason is perceived why we may not do so in all cases. That we have no authority to do so has been so often decided

The Louisville, New Albany and Chicago Railway Company *v.* Miller.

by this court that a citation of the cases would be impracticable.

A strong appeal is made to us to reverse the judgment because, as is claimed, the damages assessed are excessive.

As was said by this court in *Bedford, etc., R. R. Co.* v. *Rainbolt, supra:* "We are impressed with the conviction, after reading the evidence in the case, that, considering the extent of the injuries actually suffered by the appellee, the damages were excessive, but this was a matter peculiarly within the province of the jury."

And as was said in *Louisville, etc., R. W. Co.* v. *Pedigo,* 108 Ind. 481 (488): "As, however, nothing appears to induce the belief that the jury must have acted from prejudice, partiality or other improper motive in the assessment of the damages we can not disturb their verdict. It was their exclusive province to determine the amount of compensation to be awarded for the injury sustained by the plaintiff, and having determined it so far as we can judge, upon the evidence without the intervention of improper motives, the court can not interfere." Besides, the trial judge had vastly better opportunities of weighing the evidence than we have, if we even had the authority to do so, and it was his duty, if he thought the damages were excessive, to promptly grant a new trial, and the legal presumption is that he courageously did his duty. Therefore, by refusing the new trial he has said to us that, after carefully reviewing the evidence, he is of opinion that the damages are not excessive. *Cincinnati, etc., R. W. Co.* v. *Madden,* 134 Ind. 462.

As we find no error in the record the judgment is affirmed.

Filed May 10, 1894; petition for rehearing overruled June 11, 1895.