Board of Commissioners of Huntington County v. Bonebrake.

# Board of Commissioners of Huntington County v. Bonebrake.

[No. 18,059. Filed December 2, 1896.]

| | |
|---|---|
| 146 | 311 |
| 148 | 63 |
| 148 | 342 |
| 148 | 464 |
| 148 | 616 |
| 149 | 69 |
| 151 | 399 |
| 151 | 579 |
| 152 | 312 |
| 152 | 539 |
| 146 | 311 |
| 162 | 306 |
| 146 | 311 |
| 164 | 410 |
| 146 | 311 |
| 166 | 66 |
| f168 | 459 |
| 146 | 311 |
| 170 | 260 |

Appeal.—*Review.—Law of Case.*—A decision of the Supreme Court constitutes the law of the case, so far as the principle involved is applicable, throughout all stages of the cause thereafter; this is true regardless of whether the question arose each time in the same manner.

Negligence.—*Defective Bridge.*—A person having no knowledge of a defect in a bridge is not guilty of negligence in passing over the same, though he may have no legitimate business requiring him to do so.

Trial.—*Interrogatories to Jury.—Special Verdict.*—In an action against a county for damages for personal injuries sustained by reason of a defective bridge, an interrogatory, "Was not plaintiff's fall and injury occasioned solely by reason of the rotten, defective and doty condition of the timbers of said bridge, and the failure of the defendant to repair the same?" does not submit a question of law to the jury, and is not in violation of the act of March 11, 1895, prescribing that each interrogatory to the jury be so framed as to require the finding of but one fact.

Practice.—*Conclusion of Negligence.—Special Verdict.*—The conclusion of negligence is not for the jury where a special verdict is returned.

Trial.—*Interrogatory to Jury.—When Improper.*—In an action for damages for personal injuries the following interrogatory to the jury, "Was not said injury received without any fault or negligence of the defendant?" is improper as involving both the law and the facts.

Same.—*Interrogatory to Jury.— Ultimate Conclusion of Fact.*— Where, in an action against a county for damages for personal injuries resulting from a defective bridge, it was found that the injuries resulted from the decayed condition of the bridge, of which the defendant had knowledge and failed to repair, and that the plaintiff had no knowledge of the defects, that he went over the bridge slowly and carefully, and that he could not have seen the defects, an interrogatory to the jury calling for an ultimate conclusion of fact as to plaintiff's contributory negligence is improper.

Practice.—*Special Verdict.— Improper Findings.*—Improper findings in a special verdict do not defeat the verdict but should be disregarded.

Board of Commissioners of Huntington County v. Bonebrake.

SAME.—*Interrogatories to Jury, When May Be Rejected by Court.*—
It is not error for the court to reject interrogatories propounded to
the jury, where there are other interrogatories covering the same
facts.

APPEAL.—*Erroneous Instruction.*—*When Not Available Error.*—An
erroneous instruction is not available error when it is such an in-
struction as cannot be applied by the jury.

From the Whitley Circuit Court. *Affirmed.*

*O. W. Whitelock* and *S. E. Cook,* for appellant.

*Marshall, McNagny & Clugston* and *R. A. Kauf-
man,* for appellee.

HACKNEY, J.—This is the second appeal in this
cause, the former decision being reported in *Bonebrake*
v. *Board, etc.,* 141 Ind. 62. The action was by the ap-
pellee to recover damages on account of personal in-
juries sustained in the crushing of a public bridge
under the weight of a traction engine upon which he
was riding. As will be seen from the report cited the
appellee succeeded on the former appeal, and that one
of the questions decided arose upon the action of the
trial court in sustaining the demurrer of the board to
the evidence. The principle then adhered to was that
counties were required to keep such bridges in proper
repair, and that a failure to do so, resulting in injury,
without contributory negligence on the part of the
person injured, subjected the county to liability for
such injury. In the trial, resulting in the judgment
from which the present appeal is prosecuted, the
lower court followed, in its rulings, the theory upon
which said appeal was decided and the appellee re-
covered a judgment for $6,500.00.

After the decision of this court in *Bonebrake* v.
*Board, etc., supra,* it was held by us, in *Board, etc.,* v.
*Allman,* 142 Ind. 573, that no liability rests upon
counties for injuries resulting from the failure to re-

pair public bridges, and the appellant now insists that upon the holding of the latter case the appellee's cómplaint stated no cause of action, and that the lower court erred in rendering judgment, upon the special verdict, in favor of the appellee.  Opposing this insistence the appellee urges that the decision upon the former appeal in this cause established "the law of the case," which must be adhered to and which determines the sufficiency of the complaint.  It is a general rule, many times followed in this State, that a decision of this court shall constitute "the law of the case," so far as the principle involved is applicable, throughout all stages of the cause thereafter. *Hawley* v. *Smith*, 45 Ind. 183; *Dodge* v. *Gaylord*, 53 Ind. 365; *Kress* v. *State, ex rel.*, 65 Ind. 106; *Test* v. *Larsh*, 76 Ind. 452; *Richmond Street R. R. Co.* v. *Reed*, 83 Ind. 9; *Board, etc.*, v. *Pritchett*, 85 Ind. 68; *Gerber* v. *Friday*, 87 Ind. 366; *Board, etc.*, v. *Indianapolis, etc., R. W. Co.*, 89 Ind. 101; *Rinard* v. *West*, 92 Ind. 359; *Anderson* v. *Kramer,* 93 Ind. 170; *Armstrong* v. *Harshman*, 93 Ind. 216; *Davis* v. *Krug*, 95 Ind. 1; *Jones* v. *Castor*, 96 Ind. 307; *Forgerson* v. *Smith, Admr.*, 104 Ind. 246; *Walker, Admx.,* v. *Heller*, 104 Ind. 327; *Pittsburgh, etc., R. W. Co.* v. *Hixon*, 110 Ind. 225; *McCormick, etc., Co.* v. *Gray*, 114 Ind. 340; *Mason* v. *Burk*, 120 Ind. 404; *Nickless* v. *Pearson*, 126 Ind. 477; *Lillie* v. *Trentman*, 130 Ind. 16; *Cleveland, etc., R. W. Co.* v. *Wynant*, 134 Ind. 681; *Ohio, etc., R. W. Co.* v. *Hill, Admx.*, 7 Ind. App. 255.  See also 2 Van Fleet's Former Adjudication, p. 1302; Elliott's App. Proced., section 578. See also 2 Van Fleet's Former Ádjudication, p. 1302.

In *Forgerson* v. *Smith, supra*, it was said: "But where the questions are necessarily involved, and where the conclusion declared could not have been reached without either expressly or impliedly deciding such ques-

tions, the judgment on appeal rules the case throughout all its subsequent stages." Similar expressions of the effect of the rule are contained in many of the cases cited. If, therefore it is the question decided, the rule of law applied, that shall operate throughout the case, it cannot be important to look to the manner in which that question arose, whether upon demurrer to complaint, answer or evidence. If the conclusion were otherwise the rule would easily lose its force and confusion inextricable follow from holding, upon demurrer to the evidence, that a given state of facts permitted a recovery, while that same state of facts, pleaded in a complaint, constituted no cause of action. We must hold, therefore, that the appellant is precluded by "the law of the case" to insist that the county was not required to keep the bridge in repair and was not liable for the consequences of its failure to do so. We do not intimate a view of the case if the complaint had been amended, or the evidence were different, either as to the performance of the duty to repair, or as to the contributory fault of the appellee.

But one other ruling of the trial court is covered by the assignment of errors, and that is in overruling appellant's motion for a new trial, and several objections are made to that ruling. An interrogatory was submitted to the jury, asking if "the southeast corner of the bridge sagged down six inches immediately prior to the time of the accident," and it was answered, "No evidence to show what the condition was immediately prior to the accident." Appellant moved to require the jury to answer said interrogatory more specifically, and that motion was overruled. The testimony of the witness cited as affirming that the bridge, at the corner mentioned, was "sagged down six inches immediately" before the accident, was to the effect that some four years prior to the accident the bridge had, at the

west end, "washed out until it had settled about six or eight inches at the corner." This, said witness further testified, was at a time when he repaired the bridge at the west end where it had washed out. The evidence does not relate to the inquiry either as to the time or the part of the bridge which had sunken down, and there was no error in refusing to require a more specific answer to the interrogatory.

The weight of the evidence upon the question of the appellee's knowledge of the defective condition of the bridge at the time he drove upon it is discussed by counsel. Appellee testified that he had no knowledge of defects, and it appeared that prior to the accident a petition was circulated for signatures in appellee's neighborhood, and was placed in his hands for examination and signature, in which petition it was stated that said bridge was in a defective condition and it was sought to procure the county board to rebuild it. This statement of the petition was not shown to have been read by the appellee, but if it had been so testified, the evidence would stand in conflict and we could not assume the province of the jury in passing upon it.

It is next contended that the answers to interrogatories 31, 35 and 36 were not sustained by the evidence. Said interrogatories, with the answers, were:

"No. 31. Was the plaintiff proceeding slowly and carefully over said bridge on said day? Ans. Yes.

"No. 35. Was not the plaintiff's fall and injury occasioned solely by reason of the rotten, defective and doty condition of the timbers of said bridge and the failure of the defendant to repair the same? Ans. Yes.

"No. 36. Was not said injury received without any fault or negligence of the defendant? Ans. Yes."

As we understand counsel for appellant, they support their contention upon this proposition by the evidence that the appellee did not own the engine, was

not employed to ride upon or manage it, and was upon it only by the license of those in charge, and that he was, therefore, guilty of contributory negligence. While it is suggested by appellee's learned counsel that the same evidence of contributory negligence was passed upon in the former opinion of this court, and was held not sufficient to establish such contributory negligence, and that the question made by appellant's counsel is foreclosed by the law of the case, and while this proposition is not questioned by the appellant, it does not appear that one not knowing of a defect in a bridge should forego riding over it, unless he has legitimate business requiring him to do so, or that he might not, without negligence, ride over it for mere pleasure.

It is further objected that interrogatory 35 submitted to the jury a question of law and violated the act relating to special verdicts in the form of interrogatories and answers (Acts 1895, p. 248), in that it was so framed as to require the finding of more than one fact. In our opinion counsel err in both propositions. There is no question of law involved in the inquiry as to the cause of the bridge's fall, and there was but one fact which was sought from the evidence of the circumstances or conditions.

Interrogatory 45 asked: "In what sum was this plaintiff damaged by reason of the injury received by him by the collapse of said bridge?" This inquiry did not seek to elicit more than one fact nor the statement of a conclusion of law. Counsel merely suggest that it does, and do not offer a reason supporting same. No reason occurs to us for their construction of the interrogatory.

Interrogatory 32 was as follows: "Was the plaintiff, in passing over said bridge, * * * exercising such care, caution and prudence as persons of ordi-

nary prudence would and do exercise under like circumstances?" This interrogatory and that numbered 36, it is contended, each submitted to the jury a question of law. The conclusion of negligence is not for the jury where a special verdict is returned. *Pittsburgh, etc., R. R. Co. v. Spencer*, 98 Ind. 186; *Indianapolis, etc., R. W. Co. v. Bush*, 101 Ind. 582; *Conner v. Citizens' Street R. W. Co.*, 105 Ind. 62; *Chicago, etc., R. W. Co. v. Burger*, 124 Ind. 275; *Louisville, etc., R. W. Co. v. Lynch*, (Ind. Sup.) 44 N. E. 997. It involves both the law and the facts. Interrogatory 36, therefore, was improper. The degree of care which persons of ordinary prudence would exercise under given circumstances is such as the law pronounces sufficient to relieve the actor from fault. As to whether that degree of care has been exercised may be determined from the facts disclosing the conduct of the party, the primary facts proven, or, in cases where the jury may draw the ultimate inference or conclusion from the primary facts, it may be disclosed by a statement that the conduct of the party, the primary facts being also given, was such as would have been that of persons of ordinary prudence under like circumstances.

Negligence exists when one has failed to exercise that care which persons of ordinary prudence and caution would exercise under like circumstances. Whether that degree of care has been exercised is a conclusion of fact and does not involve a question of law or the statement of a legal proposition. In reaching that conclusion the conduct of the party is not measured by any legal test or standard, but it is measured by the ideal ordinary person, whose care and prudence are not of the very highest, nor yet of the very lowest, but are such as from the common observation of men we conceive to occupy a position between

these extremes. He is called a person of ordinary prudence and caution. When the facts disclose that an injury has been received under circumstances in which the injured party has acted as would this ideal person, then the law is applied by the court and the legal conclusion and the judgment of due care follow. That the finding of the jury, that the injured party acted with such prudence and caution as this ideal person would have acted is not the equivalent of a finding of freedom from negligence, is made clear when we observe that such finding permits the court to apply the legal rule that such prudence and caution shall constitute due care, while, if the finding of non-negligence were properly returnable, the court would have no duty but to render judgment. The distinction may possibly be made clearer by recalling that where a general verdict is to be returned in a negligence case the court may properly instruct the jury that if it is found to be a fact that the plaintiff, in the occurrence, acted with such care and caution as a person of ordinary prudence and caution would have acted under like circumstances, then, as a matter of law, he was not negligent. If that which would thus be designated as a fact were a proposition of law, the instruction so framed would become absurd in that it would direct the jury that if a legal proposition should be found, a legal conclusion, the synonym of such proposition, would follow. This distinction between a finding of non-negligence and a finding of the facts which the law denotes non-negligence was recognized in *Louisville, etc., R. W. Co.* v. *Miller*, 141 Ind. 533.

The interrogatory numbered 32 did not ask the statement of a legal conclusion, nor did it inquire for one of the primary facts establishing the appellee's conduct, but it was an inquiry as to the ultimate conclusion of fact authorized to be drawn only from

primary facts. As to whether this was permissible depends upon the inquiry as to whether this was one of the cases where the jury is permitted to return the ultimate fact. Such a case is, that where two or more inferences may be reasonably drawn, that is, where, upon the facts, one impartial sensible man may reasonably draw one inference while another impartial and equally sensible man may reasonably draw the opposite inference. Smith v. Wabash R. R. Co., 141 Ind. 92; Cincinnati, etc., R. W. Co. v. Grames, 136 Ind. 39.

The present case is not of that class. Here it was found that the injury resulted from the decayed condition of the bridge, of which condition appellant had knowledge and failed to repair the same; that the appellee had no knowledge of the defective condition of the bridge; that he went upon and over said bridge slowly and carefully, and that he could not have seen its defects. These were the essential primary facts, in connection with those of the injury, which required the conclusion from the court, in applying the law of the case, that appellee should recover. They established a duty neglected, with resultant injury, sustained without contributory fault. The interrogatories 32 and 36, therefore, although unauthorized, were not essential to the support of the judgment and if cast out, would not impair the verdict. It is an established rule of practice that improper findings in a special verdict do not defeat the verdict, but should be disregarded. Louisville, etc., R. W. Co. v. Miller, supra; Jones v. Casler, 139 Ind. 382; Equitable Acc. Ins. Co. v. Stout, 135 Ind. 444; Louisville, etc., R. W. Co. v. Treadway, 143 Ind. 689.

Complaint is made that the court rejected several interrogatories, propounded by the appellant, such as, Did the plaintiff frequently cross the bridge? Did he see a petition for a new bridge? Was he asked to

sign such petition? Did he know of the defective condition of the bridge? Was he injured in a runaway, after the accident of the falling bridge? Several of these inquiries sought merely evidentiary findings relating to the fact of knowledge or the absence of knowledge, on the part of the appellee, of the defects in the bridge. There were interrogatories and answers properly covering the facts in dispute upon that question, besides it is not the proper practice to find merely evidentiary matters. The inquiry as to an injury in a runaway, if answered in the affirmative, would have given us no light upon the question as to whether the damages were excessive, and we suppose that could have been its only purpose. We could not know that such injury was slight or serious, whether it was upon the limbs or parts of the body injured in the bridge accident, or whether the jury considered such injury apart from that occasioned by the falling of the bridge, and allowed nothing on that account.

It is objected, also, that the damages, $6,500.00, were excessive. There was conflict in the evidence as to the character and extent of the appellant's injuries; some of the evidence for the appellant tending to show that to some extent he feigned greater disabilities than he really suffered from. The jury found that he was permanently disabled; that from the occurrence in July 1890, to the time of the trial, in September, 1895, he suffered great bodily pain continuously, and was rendered incapable of performing labor upon the farm; that he was "crushed, bruised and maimed in his hips and spine," and that he was, prior to said injury, "a strong, vigorous man, able to perform the work on his farm."

Much evidence supports these findings, and we can not pass upon the conflict and determine whether they were supported by a preponderance of the evidence.

Two additional questions presented involve the propositions already decided with reference to "the law of the case," the overruling of appellant's motion for judgment on the verdict and the sustaining of appellee's motion for judgment on the verdict. It is complained further that the court erred in giving a general instruction with reference to the appellant's duty to keep the bridge in repair when a special verdict was required. An error in such an instruction would not be available, because it could not be applied by the jury. *Louisville, etc., R. W. Co. v. Lynch, supra; Wollen v. Wire, Admr.*, 110 Ind. 251.

No error in the instruction is pointed out, and we perceive none.

Only one other question is suggested, and it is not discussed; that is that the court refused to permit appellee to answer appellant's question as to whether "there wasn't a great deal of contention in that neighborhood between Tobias Myers, the road supervisor, and Mr. Provines, the trustee, about the repair of the bridge * * * and other bridges" prior to the accident?

The inquiry did not relate to the appellee's knowledge of any defects in the bridge, and if answered in the affirmative it does not occur to us that it could have had any bearing upon the case.

Finding no available error in the record the judgment is affirmed.