Seybold *v.* The Terre Haute and Indianapolis Railroad Company.

SEYBOLD *v.* THE TERRE HAUTE AND INDIANAPOLIS RAILROAD COMPANY. : .

[No. 1,931. Filed April 22, 1897. Rehearing denied Nov. 2, 1897.]

APPEAL AND ERROR.—*Evidence.*—*Bill of Exceptions.*—The longhand manuscript of the evidence must be filed in the clerk's office before being incorporated in the bill of exceptions. *pp. 376, 377.*

EVIDENCE.—*Damages.*—*Highways.*—In an action for damages against a railroad company for injuries received in passing over a highway left in an imperfect condition by a crossing of such railroad, the record of certain proceedings had in the commissioners' court in relation to the construction of a wall along the highway and river bank at such point, on petition of plaintiff and others, was properly admitted in evidence in the trial of such cause for the purpose of showing plaintiff's knowledge of the condition of the highway. *pp. 377, 378.*

SPECIAL VERDICT.—*Judgment.*—*Review.*—Where a party moves for judgment in his favor on a special verdict, and excepts to the overruling of his motion, or excepts to the action of the court in rendering judgment upon a special verdict for his adversary, he thereby admits, so far as such action of the court is concerned, that the special verdict states the facts fully and correctly, and in reviewing such action of the court the special verdict cannot be aided by · intendment. *p. 378.*

RAILROADS.—*Construction of Road Across Highway.*—*Duty of Railroad Company.*—*Negligence.*—*Statute Construed.*—Section 5153, Burns' R. S. 1894, imposes upon a railroad company in constructing its road across a highway the duty of restoring the highway to its former state as nearly as possible, and the failure to observe such duty constitutes actionable negligence in respect to any person who sustains an injury thereby without his fault. *pp. 378, 379.*

SAME.—*Construction of Road Across Highway.*—*Embankments.*—*Barriers.*—Where the construction of a railroad across a highway causes a fill in the highway so as to make it dangerous for travelers thereon, unless protected, it is the duty of the railroad company to erect proper guards or barriers to prevent travelers from falling off the embankment. *p. 380.*

HIGHWAYS.—*Railroads.*—*Construction of Railroad Across Highway.*—*Negligence.*—*Statute Construed.*—Highways are made to be traveled upon at all seasons of the year, and a railroad company cannot escape liability for an injury received at a crossing of such railroad and a highway by reason of the failure of the railroad company to restore the highway to its former condition, as pro-

Seybold *v.* The Terre Haute and Indianapolis Railroad Company.

vided by section 5153, Burns' R. S. 1894, for the reason that the highway was covered with ice at the time of the accident.  *pp. 385, 386.*

SPECIAL VERDICT. — *Review.* — *Judgment.* — *Reversal.*— Where the plaintiff in an action for damages caused by the negligence of the defendant, failed to recover in the court below and seeks a reversal of the action of the trial court upon a special verdict, the facts shown by the verdict must be sufficient to authorize a judgment for him, or the judgment against him must stand.  *pp. 388, 389.*

NEGLIGENCE.—*Knowledge of Danger.*—*Highway.*—In an action for damages caused by a defective highway it does not devolve upon plaintiff to show that in his use of the highway, known by him to be dangerous, he exercised extraordinary care to avoid the injury but that he exercised care in proportion to the known danger. *pp. 389–391.*

From the Cass Circuit Court. *Reversed.*

*D. H. Chase* and *Nelson & Myers*, for appellant.

*McConnell & Jenkins, W. H. H. Miller, F. Winter* and *J. B. Elam*, for appellee.

BLACK, J.—The appellant sued the appellee, the action being based upon the provisions of section 5153, Burns' R. S. 1894 (3903, Horner's R. S. 1896), that every railroad corporation shall possess powers, and be subject to liabilities and restrictions, "to construct its road upon or across any stream of water, water course, road, highway, railroad or canal, so as not to interfere with the free use of the same, which the route of its road shall intersect, in such manner as to afford security for life and property; but the corporation shall restore the stream or water course, road or highway, thus intersected, to its former state, or in a sufficient manner not to unnecessarily impair its usefulness or injure its franchises."

The facts upon which judgment in favor of the appellee was based, were set forth in a special verdict.

In the first paragraph, the verdict stated the incorporation of the appellee, and its possession, management, operation, and control of a certain line of steam

railway, and its exclusive possession, care, custody, control, and management of the roadbed, machinery, and other appliances used in operating said line of railway, from December 1, 1879, to March 1, 1892. In the second paragraph it is stated that a certain railroad company in 1874 built an embankment about seven feet high and thirty-four feet wide at the base, and seventeen feet wide at the top, and constructed a railroad thereon, running across a public highway in Eel township in Cass county, Indiana, known as the Logansport and Georgetown road, running in an easterly and westerly direction, immediately along the north bank of the Wabash river; that said railroad crossed said highway practically at right angles to the line of said highway, at a point on or near the east boundary line of a certain farm then and still owned and occupied by the appellant, and situated on the north bank of the Wabash river, in said township, and lying west of the city of Logansport about one-half mile; that at the time said railroad was built said railroad company constructed approaches on the east and west side of said railroad embankment, so that travelers on said highway could cross said railroad, and said approaches so constructed remained in substantially the same condition, and were used for the purpose for which they were made until about the year 1889.

The special verdict proceeds as follows: "3. That in the year 1889, the Wabash river had washed away a portion of the earth between said highway and the river, immediately west of said railroad, and to protect said highway and avoid moving it further north in the direction of plaintiff's house and upon his land, the board of commissioners of Cass county and the trustee of Eel township, upon the petition of the plain-

VOL. 18—24

tiff and said trustee, by agreement, constructed a re-
taining wall along the bank of said river, beginning
at the abutment of the railroad bridge across the Wa-
bash river, on the defendant's right of way, and ex-
tending down said river and along the highway more
than one hundred and fifty feet; and at the time said
wall was built, and in connection with that work, the
defendant railroad company placed along its right of
way from the north end of the bridge across the river
to the north side of said highway, thirty-seven car-
loads of gravel and earth, and four of boulders; which
said materials were arranged and spread by William
Hupp, the then acting supervisor of the road district
in which said highway was situated, acting as such
supervisor, assisted by one of his men and certain
employes of the railroad company, the work of spread-
ing and placing the same being under the direction of
said supervisor.    The greater part of said material
was thrown on the west side of said railroad track,
and was spread over the defendant's right of way from
the abutment wall to and upon the traveled part of
the highway, and as far west as the west line of the
railroad company's right of way; but the defendant
company never did any work on the approach to said
crossing west of the west line of the right of way, ex-
cept as small portions of the material so spread ex-
tended beyond said line; that the general surface of
the said highway was not upon an elevated grade
until after said railroad was built, but after said ap-
proaches were originally constructed, as aforesaid,
that portion of said highway lying west of said rail-
way crossing was graded by the highway authorities
of Eel township from the point where said approach
on the west side of said railroad began, and said
graded portion connected with said approach so as to
make the general elevation of that portion of the high-

way nearer that of the railroad that [than] when said railroad was first constructed; in the years 1890 and 1891, James McMillen, the then acting road supervisor in said district, caused gravel to be placed on the west side thereof, on two different occasions, beginning said work west of the west end of said approach and extending the same to a point six feet west of the west rail of said railroad; that a portion of this work was done by the plaintiff while working out his road tax, said plaintiff being permitted, at his own request, to do said work at that place by said supervisor; and in addition to such work said plaintiff put some gravel on said highway within the limits of the defendant's right of way voluntarily and at his own expense, and according to his own ideas, and without the supervision or direction of anybody during this latter work, in the year 1891.

"5. That said plaintiff, of his own motion, as aforesaid, placed gravel on said approach from a point about six feet west of the west rail of said railroad to a point some ten feet west thereof, and spread and placed the same as he saw fit, and so left the surface of said highway at said point that there was a slight elevation or ridge near the center of the traveled portion thereon, and south of said ridge a slight inclination toward the river and south side of said highway, at the point where he so placed said gravel, and said inclination toward the south increased slightly further west, and was greater at a point about forty feet west of said west rail of said railroad than where plaintiff so placed said gravel. And the road supervisor then in office in said road district saw said work after it was done, and made no objection thereto, and the surface of the highway upon said approach remained as it was so made, on the 12th day of February, 1892, and was reasonably safe for travelers thereon exercising

ordinary care and diligence, when not covered with snow and ice.

"6.    That the plaintiff, Frederick Seybold, from 1874, continuously up to the 12th day of February, 1892, was well acquainted with all the conditions of said highway, with respect to the width, length, steepness of grade, slope of sides, and all other conditions, and at the time of his alleged injury, as well as for more than ten years continuously prior thereto, resided on his farm with his family within three hundred feet of said crossing, and during all of said years passed over said highway frequently with his wagon and team and other vehicles, and on said 12th day of February, 1892, as well as for more than ten years prior thereto, was well acquainted with and knew all dangers attendant upon the use of said highway crossing.

"7.    That on the 12th day of February, 1892, the plaintiff left his house in the afternoon, and drove to a farm owned by him about four miles from his residence; that in the course of his journey he passed over the crossing of the defendant's railroad track on the Logansport and Georgetown road, and, having obtained a load of wood, started to return home; that he was driving two horses attached to a farm wagon, one of said horses being six years old and the other five, and the team was free to go. The wagon had tires on the wheels three inches wide, which were old and worn smooth and the edges rounded off; the wagon also had a lock for putting a brake on the rear wheels. Driving this team and wagon, plaintiff, on his return home, approached the railroad crossing mentioned, from the east, and crossed the track of the railroad, substantially at right angles. He had no difficulty in ascending the approach to the railroad, or in crossing the tracks, which were substantially on

a level with the highway; that immediately on the
west side of said railroad track the surface of the
highway was practically level and about fifteen feet
wide, and the surface of the traveled portion of said
highway west of said railroad track and on the de-
fendant's right of way had a slight ridge in the middle
between the tracks where wheels ordinarily run,
which ridge began about six feet from the west side
of said railroad track; the surface of the traveled
portion of said highway upon the defendant's right
of way, after getting some six feet from the west side
of the defendant's track, had a slight inclination to-
ward the south, being in the direction of the Wabash
river. After leaving defendant's right of way, and
immediately to the westward of it, the traveled por-
tion of said highway became slightly narrower than
it was upon the right of way itself, and the inclina-
tion of its surface towards the south was slightly in-
creased. On the day mentioned, when plaintiff was
returning as stated, he passed safely over the defend-
ant's railroad track, driving his wagon in the traveled
portion of the highway, until the rear wheels of his
wagon reached a point about six feet west of the west
rail of the defendant's track; the whole surface of the
highway, except small patches, was covered with ice
and snow and was very slippery, and at the point
named, the rear wheels of his wagon began to slip
south, in the direction of the Wabash river. This
movement of the wagon was caused by the icy condi-
tion of the road. The rear wheels did not follow the
front wheels or the ruts or tracks made there by other
vehicles, but ran wholly on the south side of the slight
ridge in the center of said highway, and continued to
slip until the rear end of the wagon drew the forward
end south also, to some extent; and at a point where
the rear of said wagon was about forty feet west of the

west rail of the defendant's railroad track, the wagon slipped so far off the traveled portion of the highway and down the slope of its embankment toward the Wabash river that it turned over, throwing the plaintiff from his seat on his load of wood and causing the injuries hereinafter described.

"8.     That on said February 12, 1892, and for a month prior thereto, the traveled portion of the Logansport and Georgetown highway, at the point intersected by defendant's line of road, and for one hundred and fifty feet west therefrom, was from twelve to fifteen feet in width; that the defendant's right of way at said crossing was seventy feet in width, and that the space owned and occupied by defendant for and as its right of way on the west side of said crossing, was thirty-five feet from the center of defendant's track; that the elevation from the center of defendant's track and roadbed to a point thirty-five feet west from the center thereof to the west line of defendant's right of way was three feet four and a half inches; and the elevation from a point fifty feet west from the center of said track and roadbed was four feet six and a half inches; and the elevation from the center of said track and roadbed at a point eighty-one feet west from the center of said roadbed and crossing was six feet and seven and a half inches; the elevation from a point one hundred feet west from the center of said right of way and roadbed was seven feet and eight inches; and the elevation from a point one hundred and fifty feet west from the center of said crossing and roadbed was nine feet seven and a half inches; that north of the north side of the traveled portion of said highway, at the point intersected by defendant's tracks, a distance of about ten feet, was a cattle guard, with a board fence running west to the west line of defendant's right of way, and from thence west one

hundred and fifty feet was a hedge fence along the premises owned by the plaintiff; which hedge fence was from four feet six inches to five feet six inches from the north line of said Logansport and George-town road and parallel therewith; that about twenty-five feet south of the south line of said Logansport and Georgetown road was the north end of defend-ant's bridge spanning the Wabash river; that from the east side of the north end of said bridge there was a stone wall extending west along the margin of the Wabash river, about fifty feet distant from the hedge fence aforesaid, to a point more than one hundred and fifty feet west of said road crossing; that all that space forming a part of defendant's right of way and lying south of the south line of the Logansport and Georgetown road for eighteen feet south therefrom was unoccupied and unused for any purpose; that the fill at the point where defendant's line of road inter-sects said Logansport and Georgetown road is about seven feet above the original surface of the ground. There never was any guard rail along the west ap-proach to said crossing, at any time or at any point, and there was not, on the 12th day of February, 1892, any road or highway by which the plaintiff could go to and from his farm except said Logansport and Georgetown road; that the team of horses driven by plaintiff at the time of his injury was reasonably gentle, and the plaintiff had them under control at the time of starting and while going down the west ap-proach of said crossing; and when he started down said approach, plaintiff applied the brake to the hind wheels of said wagon, but not with sufficient force to lock said wheels and keep them from turning, al-though said brake was sufficient to lock said wheels when applied with full force. And at the time plain-tiff started down said approach, he was well ac-

quainted with the character of his team, wagon, load, and brake, and there was sufficient light for him to distinguish a man at a distance of twenty rods, and to see distinctly all his immediate surroundings. The time was between 5 and 6 o'clock p. m.

"10. That when plaintiff's wagon turned over in the manner herein found, he was standing on his knees on top of about a cord of wood, with which said wagon was loaded, driving his horses with his left hand and applying the brakes to the wheels of the wagon with his right hand, and by the overturning of his wagon was thrown therefrom and fell upon the ground and boulders between said wagon and the Wabash river."

In the remaining portion of the tenth paragraph of the verdict, and in the eleventh and twelfth paragraphs, the character and extent of appellant's injuries, his expenses incurred by reason thereof, and the character of his employment and the value of his services therein are stated at length; and in the thirteenth paragraph it is shown that at the time of his injury he was sixty years of age, and had an expectancy of life of 14.1 years, and was enjoying fair average health. The fourteenth paragraph was the formal alternative finding of a special verdict, the appellant's damages being assessed at $1,000.00.

The appellant has assigned as errors the overruling of his motion for a new trial, the sustaining of the appellee's motion for judgment in its favor on the special verdict, and the overruling of appellant's motion for a judgment in his favor on the special verdict.

There has been some discussion concerning the question as to the sufficiency of the evidence, but the evidence is not properly before us. There is in the transcript a bill of exceptions containing what the clerk certifies to be the original longhand manuscript

and transcript of the shorthand notes of the evidence given in the case, made and transcribed by the official stenographer and reporter of the court below; but it does not appear that this longhand report of the evidence was filed in the office of the clerk of the trial court before it was incorporated in the bill of exceptions.

Under many decisions, the evidence cannot be treated as properly in the record. *Pruitt* v. *Farber,* 147 Ind. 1; *Kelso* v. *Kelso,* 16 Ind. App. 615; *Pittsburgh, etc., R. W. Co.* v. *Cope,* 16 Ind. App. 579.

One of the grounds assigned in the motion for a new trial was the admission in evidence of the record of certain proceedings before the board of commissioners of Cass county, the appellant's exception to this action of the court being shown by a separate bill of exceptions. The proceedings of the board of commissioners thus introduced in evidence by the appellee were had in the year 1884, upon the petitions or written propositions of the appellant and the trustee of Eel township, in relation to the construction of the wall mentioned in the verdict, along the north bank of the river, and the appropriation of money by the board for such purpose.

Before the record was read in evidence, the court, on its own motion, instructed the jury as follows: "I will say to the jury now, they must not consider this evidence for any purpose, except for the purpose of determining what knowledge, if any, plaintiff had of the condition of this highway."

The evidence thus admitted tended in some degree to show the appellant's knowledge of the condition of the highway, and such knowledge was a material matter. The question before us under this alleged reason for a new trial is not one as to whether the jury found any fact which was not sufficiently sup-

ported by the evidence, or improperly based their finding of any fact upon this evidence so admitted; but the question is whether it was admissible for the restricted purpose to which the court expressly confined it. In deciding this question we must assume, for the purpose of passing upon this particular reason for a new trial, that the court was authorized to presume that the jury would confine the use of the evidence within the limit of the expressed purpose for which it was admitted.

Two questions involved in the special verdict are presented for our consideration; the one being whether or not the verdict shows actionable negligence on the part of the appellee, the other being whether or not it shows the appellant's freedom from negligence proximately contributing to the injury. We find it difficult to arrive at a satisfactory decision of either of these questions.

It is well settled that when a party moves for judgment in his favor on a special verdict, and excepts to the overruling of his motion, or where a party excepts to the action of the court in rendering judgment upon a special verdict for his adversary, he thereby admits, so far as such action of the court is concerned, that the special verdict states the facts fully and correctly; and in reviewing such action of the court the special verdict cannot be aided by intendment. *Louisville, etc., R. W. Co.* v. *Miller*, 141 Ind. 533; *Hoosier Stone Co.* v. *McCain, Admr.*, 133 Ind. 231.

The railroad company, in constructing its railway across the Logansport and Georgetown road, was required to construct the railway so as not to interfere with the free use of the road, and in such manner as to afford security for life and property, and to restore the road to its former state, or in a sufficient manner not to unnecessarily impair its usefulness.

The statute imposed upon the railroad company the duty of restoring the highway to its former state as nearly as possible, and the failure to observe such duty would be actionable negligence in respect to any person who sustained injury thereby without his fault. *Evansville, etc., R. R. Co.* v. *Carvener*, 113 Ind. 51; *Terre Haute, etc., R. R. Co.* v. *Clem*, 123 Ind. 15, 7 L. R. A. 588. . While the highway could not be restored in all respects to its former condition, the railway company was bound to restore it so far as not to impair its usefulness more than the additional use of it for railroad purposes rendered absolutely necessary. *Evansville, etc., R. R. Co.* v. *Carvener, supra*.

It is sufficient to constitute a violation of statutory duty, if the free use of the highway has been interfered with by the failure of the railroad company to so restore it to its former state; and in order that there may be such a failure, it is not necessary that the changed condition of the highway should be such as to present a positively and unavoidably dangerous impediment to ordinary travel. *Evansville, etc., R. R. Co.* v. *Carvener, supra*.

It is the duty of a railroad company to make and to keep the crossings of highways in good condition and safe for public travel; and the present owners of a railroad still maintaining a crossing constructed by former owners of the railroad are bound to keep it in good condition. *Lake Shore, etc., R. W. Co.* v. *McIntosh, Admr.*, 140 Ind. 261.

The failure to perform this statutory duty amounts to a creation or maintenance of a public nuisance. Shearman & Redfield, Neg. section 359; *Evansville, etc., R. R. Co.* v. *Crist*, 116 Ind. 446, 455, 2 L. R. A. 450; *Cincinnati, etc., R. R. Co.* v. *Claire*, 6 Ind. App. 390.

In *Evansville, etc., R. R. Co.* v. *Crist, supra*, the court, speaking of the statutory provision here involved, said:

"The right to interfere with a highway is coupled with the duty to make it as safe as it was before it was disturbed, or, at least, to use reasonable care and skill to do so. This duty is violated if there is a failure to restore it to its former condition, in all cases where the exercise of reasonable care and skill can effect a restoration."

When the construction of a railroad causes a fill in the highway so as to make it dangerous for travelers, unless protected, it is the duty of the railroad company to erect proper guards or barriers to prevent travelers from falling off the embankment. Barriers are a reasonable part of a necessary restoration of the highway to a safe condition for travel. Elliott on Railroads, section 1107, and authorities cited. See further Elliott, Roads and Streets, 598 et seq.; Elliott on Railroads, sections 1105-1112.

In examining the special verdict, for the purpose of determining whether it shows a failure of the appellee to maintain the crossing, with the west approach thereto, as required by the statute, and whether it shows the appellant to have exercised due care, we find that the railroad crossed the highway practically at right angles to the line of the highway, and that the fill at the crossing was about seven feet above the original surface of the ground. By the literal interpretation of the language of the eighth paragraph of the verdict the approach from the west toward the crossing would seem to have been a descent; but taking the entire verdict together, it shows a descent from the railroad, upon an elevated approach one hundred and fifty feet long and from twelve to fifteen feet wide, the entire elevation of the crossing above the point of the highway one hundred and fifty feet west of the crossing being nine feet seven and one-half inches. The general surface of the highway was not upon an

elevated grade until after the railroad was built. The railroad tracks were substantially on a level with the highway so elevated. The place where the wagon slipped so far from the traveled portion of the highway that it turned over, was about forty feet west of the west rail of the railroad. The right of way extended thirty-five feet westward from the center of the railroad. The descent to the western limit of the right of way was three feet four and one-half inches, while the descent from said center to a point fifty feet west of it was four feet six and one-half inches. The approaches were constructed when the railroad was built, and remained in substantially the same condition till about the year 1889. About that time the appellee placed along its right of way north of the bridge and between it and the north side of the highway a quantity of gravel, earth and boulders. This material was arranged and spread by the road supervisor, as such, assisted by one of his own men and certain employes of the appellee, under the direction of the supervisor, the greater part being thrown on the west side of the railroad. It was spread on the appellee's right of way, and in part on the traveled portion of the highway within the right of way. In 1890 and 1891 a road supervisor caused gravel to be placed on the approach, beginning such work at its west end and extending to a point about six feet west of the west rail of the railroad. A portion of this work (what portion is not stated) was done by the appellant while working out his road tax; and in addition to such work, appellant, in 1891, voluntarily and at his expense, put some gravel on the highway within the right of way, according to his own ideas and without supervision or direction from anybody, placing the gravel on the west approach from a point about six feet west of the west rail of the railroad to a point some ten feet west there-

of (therefore on a space about four feet long from east to west). It does not appear that he changed the conformation. He left the surface, at that place of four feet in length, so that there was a slight elevation or ridge (the height not being stated) near the center of the traveled portion of the highway, and south of said ridge a slight inclination toward the river and south side of the highway, at that point where he so spread gravel. Further west said inclination toward the south increased slightly, and was greater at a point about forty feet west of the west rail of the railroad, that is, at about the place where the wagon slipped off, than at the place where he so placed the gravel. The road supervisor saw this work and made no objection to it. It does not appear that any of the work done, whether by appellant or under the direction of the road supervisors, was improperly done, or that any of it injured the highway or rendered it more dangerous, or that any of it was not needed, or did not improve the condition of the highway, or that any fault was attributable to any one on account of any work done by way of repairing the highway.

The appellee never did any work on the west approach west of its right of way, except as small portions of the material so spread in 1889 extended beyond the line. The highway remained as thus made and repaired until the time of the accident.

Immediately west of the railroad the highway was practically level and about fifteen feet wide. The surface of the traveled portion west of the railroad, and on the right of way, had a slight ridge in the middle between the tracks where wheels ordinarily run. This ridge began about six feet from the west rail of the railroad. How far it extended is not stated. It was over a portion of this part of the highway that appellant had spread some gravel. It does not appear that

he made the ridge or the inclination of the highway south of it. The inclination is not spoken of as a part of the ridge or as the slope thereof, but as being south of the ridge, and the ridge itself is spoken of as a slight ridge in the middle between the tracks where wheels ordinarily run.

It is found that "the surface of the traveled portion of said highway upon the defendant's right of way, after getting some six feet from the west rail of defendant's track, had a slight inclination towards the south, being in the direction of the Wabash river." That is, it appears that the whole surface of the traveled way inclined to the south, there being a slight elevation in the middle between the ruts made by wagon wheels. It further appears that after leaving the right of way and immediately west of it (and therefore at about the place where the wagon slipped off) the traveled portion of the highway became slightly narrower than it was upon the right of way, and the inclination of its surface (that is, of the surface of the traveled portion of the road) toward the south was slightly increased. There appears to have been a general inclination of the highway toward the south from the place where the hind wheels commenced to slip, to the place where the wagon was overturned.

Notwithstanding the narrowness and the elevation and the inclination of the approach, there never at any time was any guard rail at any point along the west approach. The appellant had been for years passing over the highway and knew and was well acquainted with all the dangers attendant upon the use thereof. Notwithstanding the dangers thus implied, the highway was reasonably safe for travelers thereon exercising ordinary care and diligence, when not covered with snow and ice. At the time of the accident, the whole surface of the highway, except small patches,

was covered with ice and snow, and was very slippery. The appellant went from his home to his farm four miles distant for a load of wood. This was not a useless errand. He returned with about a cord of wood on the wagon between 5 and 6 o'clock p. m. The tires on the wheels of the farm wagon were three inches wide, old and worn smooth, the edges being rounded off, to what extent is not stated. The wagon was provided with a sufficient brake. The two horses attached to the wagon were five and six years old, respectively, and free to go. The appellant was sixty years old and was enjoying fair average health. He was well acquainted with the character of his team, wagon, load, and brake. On his return he crossed the railroad track substantially at right angles, the railroad being substantially at right angles with the highway. He drove in the traveled portion of the highway, that is, with the front wheels in the ruts, the rear wheels following the front ones until the rear wheels were six feet from the railroad, when they began to slip toward the south. They do not appear to have gone to the south because of his driving too far to the south, for he drove in the traveled way and in a straight course; but it is said that the slipping was because of the icy condition of the road. It appears that the horses, keeping in the proper place in the road, held there the front wheels which were near them and subject to the effect of their strength; but they were unable to keep the more distant hind wheels from slipping round until the wagon was drawn thereby into such a position that it overturned at the place where the surface of the embankment became more narrow and more inclined to the south. The appellant was on his knees on top of the load, holding the lines with his left hand and the brake with his right. It does not appear that he could have acted more safely in these re-

Seybold v. The Terre Haute and Indianapolis Railroad Company.

spects. His horses were reasonably gentle and were under his control. And while it appears that he did not apply the brake with full force, or so as to lock the wheels and keep them from turning, it does not appear, and we cannot know as matter of law, that it would have been safer to do otherwise. He had no other way to go for the load of wood, and he had no other way to return home with it. It seems sufficiently manifest that the highway was in a dangerous condition when so covered with ice and snow.

Highways are constructed for a certain use. They are made to be traveled upon day and night, and at all seasons. See *Board, etc.,* v. *Nichols,* 139 Ind. 611.

The railroad company was bound by statute not to interfere with the free use of the highway, and bound to restore it to its former state, or in a sufficient manner not to unnecessarily impair its usefulness. The surface of the highway before the railroad was built was not on an elevated grade, but its original surface was seven feet lower than the top of the railroad embankment. It was responsible for any failure to maintain the approach in such a manner as to comply with the statute. There was a high and slanting embankment. It was in a region where ice and snow cover the surface of the roads at some periods every year. Can a railroad company under the statute disregard the exigencies of the climate? While it sufficiently appears that the wheels slipped because of the icy condition of the surface, they slipped in the direction in which they went and to the place where they went because of the inclination of the icy surface, and thereby and because there was no barrier, the injury was caused. If others had placed gravel upon the road at various times, they do not appear to have impaired it, and their acts did not relieve the railroad company

VOL. 18—25

from its statutory duty of making the road as safe as it had been before the railroad was built, except so far as its usefulness was necessarily impaired by the construction of the railroad across it.    It sufficiently appears not to have been so restored, and therefore the failure of the appellee to perform its statutory duty must be regarded as established.

To sustain a recovery by the appellant, or to reverse a recovery by the appellee, it must appear in the verdict that the appellant exercised ordinary care, the burden being upon him to establish his freedom from negligence, or want of ordinary care.

Under the present state of the law as held in this State, while it is not proper in a special verdict to find or state that a party was or was not negligent, or that an act was or was not negligently done or omitted, it is proper in some cases in special verdicts to insert a statement or finding in words to the effect that a party did or did not in certain circumstances, the facts thereof being stated, act as a person of ordinary prudence would act under like circumstances.    Such a finding concerning the degree of care is regarded as an inferential fact or ultimate conclusion of fact, the presence of which will never vitiate a special verdict. The statement or finding of such ultimate inference of fact, however, has potency to affect the result to be reached by the court in its judgment upon the special verdict only in those cases in which the other or primary facts found to which such inference relates are of such character that different inferences as to the presence or absence of such degree of care may be drawn reasonably by different impartial men of ordinary intelligence.

It is held that the question whether that degree of care which persons of ordinary prudence and caution would exercise under like circumstances has been ex-

ercised is a conclusion of fact, and does not involve a question of law, or the statement of a legal proposition, yet that in cases other than those in which different inferences may be so drawn, the finding of such ultimate inference of fact is to be treated as the finding of negligence or of non-negligence would be treated, or as any statement of a conclusion of law in the special verdict would be treated, that is, it is to be ignored. See *Board, etc.,* v. *Bonebrake,* 146 Ind. 311, and cases there cited.

Negligence in its nature is a question of fact. It is the want in some degree of care. The degree of negligence or the extent of the want of care which will render conduct wrongful is a question of law. That degree is uniformly that want of care which exists when there is such an inadvertent act or omission as would be avoided by a person of ordinary prudence and caution under like circumstances.

Although the carefulness which the law recognizes as sufficient, and which it requires, is such as would be exercised by a person of ordinary prudence and caution under like circumstances, and the absence of such care is negligence in law, a statement in a special verdict that the plaintiff proceeded slowly and carefully, has been regarded as a statement of a primary fact, while a statement that he received an injury without any negligence of his, has been treated as a statement of a conclusion involving law and facts, and has been held inadmissible in a special verdict, while a finding that the plaintiff, in doing a certain act stated, was exercising such care, caution, and prudence as persons of ordinary prudence would and do exercise under like circumstances, was held not to be the statement of a legal conclusion or of one of the primary facts establishing the plaintiff's conduct, but was regarded as a statement of the ultimate conclusion of fact author-

ized to be drawn only from primary facts. *Board, etc.,* **v.** *Bonebrake, supra.*

If the primary facts found indubitably support the inference, then the inference is not necessary in the verdict, for the court may draw the proper conclusion from the primary facts.  If the primary facts found indubitably fail to support the inference stated, then it will be disregarded and the conclusion will be drawn by the court from the primary facts.  If the court can say that upon the primary facts different inferences may be reasonably drawn, then it is proper for the jury to draw and state the inference, and the court will sustain the inference drawn and stated by the jury.

Where such an ultimate inference may be thus properly stated, the court cannot without such statement conclude as a matter of law whether the conduct of the party in question was or was not negligent.    If the jury has not done all that was within its province in the finding of facts upon which the court is to act, but has omitted to find a material fact, the court must conclude against a party having the burden of establishing that fact.

In the case before us, the party having the burden of proof failed to recover.  He is seeking a reversal of the action of the trial court upon a special verdict. The facts shown by the verdict must be sufficient to authorize a judgment for him, or the judgment against him must stand.  If it should be found upon examination of the special verdict that the facts relating to the appellant's conduct do not sufficiently show him to have acted with ordinary care, he would not be entitled to judgment in his favor.    And this would be true if the facts found present a case where it would have been proper for the jury to state the inferential or ultimate fact that he did or did not exercise such

care as an ordinarily prudent and cautious person would exercise under like circumstances; for the burden being on him, he cannot claim judgment upon a verdict which does not show him entitled to it, and there can be no reversal of the judgment which was rendered against him upon such verdict. It would not be like the case of the reversal of a judgment which had been rendered upon a verdict insufficient because of the want of a finding of such inferential fact in favor of an appellee who had the burden of the issue; in which instance this court, in reversing the judgment because of the want of such material and inferential fact in the verdict, might permit the appellee to move for a *venire de novo* or a new trial, in a proper case. See *Parker* v. *Hubble*, 75 Ind. 580; *Campbell* v. *Nixon*, 2 Ind. App. 463; *Yerkes* v. *Sabin*, 97 Ind. 141, 49 Am. Rep. 434; *Brown* v. *Jones*, 113 Ind. 46; *Cincinnati, etc., R. W. Co.* v. *Grames*, 136 Ind. 39; *Dixon* v. *Duke*, 85 Ind. 434; *Trittipo* v. *Morgan*, 99 Ind. 269; *Waymire* v. *Lank*, 121 Ind. 1; *Louisville, etc., R. W. Co.* v. *Miller*, 141 Ind. 533.

The appellant was clearly chargeable with knowledge of all the circumstances and of the dangerous condition of the highway, so covered with ice and snow, and very slippery, and with knowledge of the condition of his wagon, and he must be regarded as having taken a risk in undertaking to bring home a load of wood. But was it a risk which an ordinarily prudent man under like circumstances could not reasonably be expected to take? His knowledge included acquaintance with his team, which was free to go, and under his control, and his experience in using the highway for many years. His knowledge of the dangerous condition of the highway did not debar him from undertaking to use it, unless it was manifestly so dangerous that he could not reasonably expect to

pass in safety by the exercise of ordinary prudence and care. He was called upon to exercise the caution naturally suggested to an ordinarily prudent man by such knowledge. He was not bound to show that in his use of the highway known by him to be dangerous he exercised extraordinary care to avoid the injury caused by the defect in the way. He was required to be careful in proportion to the danger of which he had knowledge; but he might proceed if it was consistent with reasonable prudence to do so.

His knowledge is an important element in determining whether he was free from contributory fault. It is a fact to be considered in connection with all the other facts of the case.

The rule that one is not bound to refrain from traveling upon a highway because he knows it to be dangerous is especially applicable in a case where the highway is the only one which affords egress from and access to his home, and his use of it in question was in returning to his home. See *Evansville, etc., R. R. Co.* v. *Crist, supra.*

In *Turner* v. *Buchanan*, 82 Ind. 147, 42 Am. Rep. 485, it was said: "Some risks, such as arise from obstructions in highways, are taken constantly by the most prudent of men, and where  *  *  *  the party pursues the usual course, believing it to be safe, he is not guilty of contributory negligence." See, also, *Henry County Turnpike Co.* v. *Jackson*, 86 Ind. 111; *Evansville, etc., R. R. Co.* v. *Carvener, supra; Hoggatt* v. *Evansville, etc., R. R. Co.*, 3 Ind. App. 437.

His knowledge is not necessarily incompatible with the conclusion that he used due care. While it tends to prove the taking of a risk, it also in a certain sense affords evidence of care. He did not go ignorantly and without experience, or in darkness or without ability or opportunity to see his way. He appears

Seybold *v*. The Terre Haute and Indianapolis Railroad Company.

to have been a competent and experienced man. Must he be regarded as precluded from pursuing his avocation of husbandry because his wagon tires were not new and unworn and sharp on the edges? It appears that they were not so, but it does not appear from facts found that the wagon was unfit for use or that it was not an ordinarily safe farm wagon. The happening of the accident did not of itself establish negligence of the appellant. Wherein can it be said reasonably that in any part of his conduct he did not act as an ordinarily prudent and careful man, having only the one road on which he could do his hauling, would act in like case? If the rear wheels had but followed the front wheels in the line of his driving a short space further, and thereby had gone into the ruts where the front wheels were, it might reasonably have been expected that he would pass in safety. Might not an ordinarily prudent man, situated as he was, reasonably have expected that they would do so? Are not ordinarily prudent men constantly so pursuing their occupations of like nature under such circumstances?

In applying the rule that the burden is on the plaintiff to show his freedom from contributory fault, care should be taken by courts not to impose upon plaintiffs the necessity of showing extraordinary carefulness.

After careful thought, we find ourselves unable to say that the appellant was not sufficiently shown to have been free from fault.

Judgment reversed, with instructions to enter judgment for the appellant upon the special verdict.

Wiley, J., took no part in this decision.