Wayne Sewer, etc., Co. *v.* Ward-Cowan Constr. Co.—195 Ind. 75.

In the case of *Asher* v. *State* (1923), 193 Ind. 479, we held a similar affidavit sufficient.

Appellants insist that said chapter 23 of the acts of 1923 (Acts 1923 p. 70) was repealed by chapter 34 of the acts of the same legislature (Acts 1923 p. 108).

We do not so construe said later act. Chapter 23 makes it a misdemeanor to unlawfully transport intoxicating liquor by any means, while chapter 34 makes it a felony to unlawfully transport it in a motor vehicle, etc.

The later act does not cover the whole subject-matter of transportation of liquor and does not repeal the former act by implication. The two acts are not repugnant, but are auxiliary and *in pari materia* and should be construed together.

It would appear that the later act was passed because the legislature evidently considered it a more serious offense to use a vehicle in such transportation, on account of the opportunity to engage in the traffic more extensively, but it does not indicate an intention on the legislature's part to repeal the first act and make all transportation lawful except when a vehicle is used. See, *Volderauer* v. *State* (1924), 143 N. E. (Ind.) 674.

No error was committed in overruling the motion to quash the affidavit.

Judgment affirmed.

---

WAYNE SEWER AND DRAIN COMPANY ET AL. *v.*
WARD-COWAN CONSTRUCTION COMPANY.

[No. 24,035. Filed April 2, 1924. Rehearing denied July 2, 1924.]

1. CONTRACT.— *Construction.*— *Drainage Improvements.*— *Payment of Contract.*—Under a contract for the construction of a sewer providing that the owner "shall make payment in full of the materialmen and laborers," etc., semi-monthly "which shall be deducted from eighty-five per cent. of the work done * * * and eighty-five per cent. of the contract likewise paid

the contractor, less previous payments, except that the cement for which the owner shall pay in full as it is delivered on the ground, and payments for the cement deducted from the semi-monthly statements," *held* the owner was to pay laborers and materialmen in full semi-monthly, and pay for cement in full on delivery, even though the amount would exceed eighty-five per cent. of the work done.   p. 80.

2. CONTRACTS.—*Construction.—Drainage Improvements.—Failure of Payment.—Abandonment by Owner.—Breach.—Damages.*—In an action on a contract for the construction of a sewer where the owner was to pay in full for labor and materials semi-monthly and for cement on delivery, on refusal of owner to make such payments, *held* the contractor was justified in abandoning the contract and could recover for the work done and damages for such breach together with the amount deposited as security.   p. 82.

3. APPEAL.—*Review.—Verdict.—Harmless Error.*—Where a verdict showed on its face that it included a certain sum held in a bank by order of the court at interest and not to be removed without an order of court, a judgment on the verdict was equivalent to an order to pay the sum to plaintiff, and appellants were not harmed thereby.   p. 83.

4. MONEY RECEIVED.—*Interest.—Money Deposited on Order of Court.—Instruction.*—Where the defendant on order of the court deposited a certain sum of money in a named bank, at interest, until ordered removed by the court, an instruction to include interest at six per cent. on that sum was erroneous, as defendant would only be liable for such interest as was actually allowed by the bank on the deposit.   p. 83.

5. APPEAL.— *Review.— Instruction.— Presumptions.*— Where a verdict does not affirmatively show whether or not interest was allowed by the jury or how much it allowed, and an instruction was given to include an erroneous rate of interest, the Supreme Court will presume that the court's instruction was followed.   p. 84.

6. EVIDENCE.—*Common Knowledge.—Interest on Deposits in Bank.*—It is a common knowledge that banks will pay at least two per cent. on interest bearing deposits.   p. 84.

7. APPEAL.—*Review.—Erroneous Judgment.—Interest.—Money Deposited on Order of Court.—Remittitur.*—A judgment on a verdict erroneously including interest at six per cent. on money kept in bank at interest until ordered removed by the court affirmed on the condition that appellee remit the difference between six per cent. and two per cent. interest, which was the rate of interest that would be paid on such deposits.   p. 84.

8. APPEAL. — Review. — Verdict. — Erroneously Granting New Trial.—Reinstating First Verdict.—Where a verdict has been set aside and a new trial granted, when no cause for new trial existed, and upon retrial a judgment more favorable to the party obtaining the new trial was rendered than the first verdict, the party obtaining the first verdict will be restored to his rights thereunder. p. 85.

9. APPEAL.—Review.—Discretion of Court.—Granting New Trial.—The court on appeal will not set aside the granting of a new trial except it affirmatively appears that no cause for a new trial existed and it is clearly shown that the court abused its discretion in such ruling. p. 86.

10. APPEAL.—Review.—Granting New Trial.—Burden to Show Error.—On appeal of second trial appellee filed cross-errors attacking the ruling of the trial court in granting a new trial after verdict of first trial, held the burden was on appellee to show there was no error in the first trial. p. 86.

From Morgan Circuit Court; Alfred M. Bain, Judge.

Action by Ward-Cowan Construction Company against the Wayne Sewer and Drain Company and another. From a judgment for plaintiff, the defendant appeals. Affirmed conditionally.

Watson & Esarey and Ralston, Gates, Lairy, VanNuys & Barnard, for appellant.

James W. Fesler, Harvey J. Elam, Howard S. Young and S. C. Kivett, for appellee.

GAUSE, J.—This action was brought by appellee against appellants to recover damages for the alleged breach of a contract. From a judgment for appellee in the sum of $25,267.58 appellants appeal.

The alleged error which appellants discuss relate to the action of the court in overruling the motion for a new trial.

Appellants say in their reply brief that, "The decision of this case depends entirely on the construction to be placed on the contract entered into between the Wayne Sewer & Drain Company as owner and the Ward-Cowan Construction Company as the contractor."

The question that is decisive of this case arises upon

78    SUPREME COURT OF INDIANA,

Wayne Sewer, etc., Co. v. Ward-Cowan Constr. Co.—195 Ind. 75.

certain instructions given by the court and certain ones requested by appellants and refused.

. By a written contract dated January 11, 1917, the appellee, as contractor, agreed to construct a certain sewer for appellant, The Wayne Sewer and Drain Company, herein referred to as the owner, for the sum of $7.50 per lineal foot. The appellant Speedway Realty Company guaranteed the performance of said contract on behalf of said owner. The contractor was to furnish the material and labor for such work, except that the owner was to manufacture the cement tile with which the sewer was to be constructed, the material for such tile, however, to be furnished by the contractor. The contractor deposited with the owner the sum of $10,000 in cash, which was to be held by the owner as security for the faithful performance of such contract and the payment of all labor and material claims. The dispute arises over the construction to be given to item 13 of said contract relating to the manner of payments on said work.

Said section 13 is as follows: "13. The Owner shall make payment in full to the material men and laborers, for material, labor appliances and construction of the drain and sewer specified in this contract, in the construction thereof, upon the approval of the claims by the Contractor, within five (5) days after the 1st and 15th days of each month, which shall be deducted from eighty-five (85%) per cent. of the work done, on the basis of seven and fifty hundredths ($7.50) dollars per lineal foot, and eighty-five per cent. of the contract price likewise paid the Contractor, less the previous payments, except that the cement for which the Owner shall pay in full as it is delivered on the ground, and payments for the cement deducted from the semi-monthly statements.

"Provided, always, that the Contractor shall pay for

MAY TERM, 1924. 79

Wayne Sewer, etc., Co. *v.* Ward-Cowan Constr. Co.—195 Ind. 75.

the services of a time-keeper, or some one to keep the accounts, in order that the Owner may have the data for the material, labor and work done, upon which to base the payments to be made hereunder, such expense not to exceed the sum of five hundred ($500.00) dollars on the entire job.

"Provided further, that the Owner shall not be required to pay the expense, or any part of it, in placing the machinery on the ground, or setting it up ready for operation, and payment in full shall be made within fifteen (15) days after the completion and acceptance of the work, and the ten thousand ($10,000.00) dollars security returned to the Contractor, provided there shall then exist no claims for labor or material, or damages, or liability, for damages, as herein provided, in which, or either of said events, said ten thousand ($10,000.00) dollars shall be held· by the Owner until the same are paid, or the liability discharged, as provided in the eleventh clause of this contract, but payments on the work as it progresses, shall not be held or treated as an acknowledgment of the performance or completing the work in accordance with the terms of the contract, if the work shall not have been done and completed according to the contract.

"Provided further, that payment shall only be made for work done, and amounts due, upon the certificate of the engineer in charge of the work, as to the amounts then due less the fifteen (15%) per cent. retained, and the previous payments for material and labor."

Said contract also contained the following provision: "18. The time of payments to be made by the owner to the contractor is hereby made the essence of this contract and in the event of the failure of the owner to make payments to the contractor as hereinabove set forth, then the contractor shall have the right to forthwith terminate this contract, and have the right to the

payment of the amounts then due it, and to the recovery of such damages as it may be legally entitled to for breach of this contract by the owner."

The contractor stopped work and refused to complete the contract when the sewer was only partially completed, claiming that the owner had breached its agreement by refusing to make certain payments to the contractor, and also to materialmen and laborers. At the time the contractor stopped work the owner was claiming that it was only required to pay out for labor and material, including cement, eighty-five per cent. of the value of the work that was completed, and it had refused to pay for labor or material, including cement, furnished in excess of eighty-five per cent. of the value of such completed work.

The contractor contended that under the contract the owner was to pay the laborers and materialmen in full, including payment in full for the cement, and that the eighty-five per cent. limitation only applied to the payments that were to be made to the contractor, except that prior payments for labor and material were to be credited before anything was to be paid the contractor. If the contractor is correct in the above contention, then the owner was in default and the contractor had the right to abandon the contract and recover for the work done and damages.

We think that under said contract the owner was to pay in full to the laborers and materialmen for the labor and material, said payments to be made 1. semi-monthly, and was to pay in full for the cement when delivered; that the contractor was to receive eighty-five per cent. of the value of the work done, also payable semi-monthly, but that the payments to the contractor were to be reduced by the amounts paid to laborers and materialmen. If the amount paid out for labor and material equalled or exceeded eighty-

five per cent. of the value of work done, then nothing was to be paid the contractor at such times.

The provision that the materialmen and laborers were to be paid in full is clear and means just what it says, namely, that they were to be paid in full, not that eighty-five per cent. of the work done was to be distributed among them. The effect of this provision is not limited by the provision that what is paid to them shall be deducted from eighty-five per cent. of the work done, but this latter provision regulates the amount to be paid to the contractor. The contractor can receive nothing until eighty-five per cent. of the work done is sufficient to pay the laborers and materialmen, and then if such eighty-five per cent. exceeds the amount necessary for that purpose, the contractor is entitled to the balance of said eighty-five per cent. If the amount paid out for labor and materials equals or exceeds eighty-five per cent. of the work done, then the contractor would not be entitled to any payments so long as that condition existed, until the contract was completed. But the fact that the owner has paid out more than eighty-five per cent. of the value of the work done would not authorize it to refuse to pay the bills for labor and materials, since it agreed to pay them in full.

This is not an unreasonable construction of the contract and does not render it unjust when we remember that the owner was holding $10,000 of appellee's money as security against loss, and that the major portion of the material paid for was cement which was delivered to the owner who was to manufacture the tile for the drain.

Of course if the contract were taken for much less than the actual cost, and after a large part of the materials and labor had been paid for the contractor were to abandon the work, the owner might not be secure

with the $10,000 deposited, but it was for the owner when executing the contract, to determine whether it had sufficient security or not.

It may be that the parties believed, when the contract was executed, that eighty-five per cent. of the work done would amount to more than enough to pay the laborers and materialmen in full and this belief may have been the reason why the owner agreed to pay the same in full, but as we view the terms of the contract, the payments to be made on that account were not limited by the amount of work done.

Considering the contract as a whole, we are of the opinion that the owner was in default in refusing to pay in full for the labor and material for said

2. work and that the contractor was justified in abandoning the contract. This gave the contractor the right to recover for the work which it had done and damages for such breach. The owner having breached the contract, the contractor was also entitled to a return of the $10,000 which it had deposited with the owner as security.

It is undisputed that under the construction of the contract we have adopted the owner was in default in making payments, so it is not necessary to consider whether there was any other breach of the contract, for this one breach entitled the contractor to abandon the work and recover for what he had done and damages.

The appellants complain because of an instruction authorizing the jury, if it found for appellee and that it was justified in abandoning the work because of the owner breaching the contract, to include the $10,000 deposited with the owner as security. It would seem to be beyond dispute that if the appellee was not in default, but was justified in abandoning the contract because the owner had breached the same, then the

MAY TERM, 1924. 83

Wayne Sewer, etc., Co. *v.* Ward-Cowan Constr. Co.—195 Ind. 75.

appellee was entitled to a return of its $10,000 which the owner held.

By agreement of the parties this $10,000 was ordered by the court to be held in a bank at interest by the owner and not to be removed without an order of court. The verdict on its face showed that it included this $10,000 and a judgment upon this verdict was equivalent to an order to pay it to appellee and appellants were not harmed thereby.

The court instructed the jury, in case it found for appellee, to include interest at the rate of six per cent., from July 19, 1917, the date of the filing of the suit, to the date of the verdict. Appellants claim that it was error to give this instruction for the reason that it instructed the jury to include interest at the rate of six per cent., upon the $10,000 held by the owner as security. As stated above, it was ordered by the court, on July 24, 1917, that this money be kept on deposit in a named bank, at interest, and the same was not to be paid out or removed without an order of the court. This order in effect placed the money under the direction of the court and from the date of such order it was not subject to other use or investment by the appellant. Under such circumstances the appellant would only be liable for such interest as the bank allowed on such deposit. Appellant would not be liable for the statutory rate as it would if the money had been in its possession to the extent that it could use it and invest it at will. The appellants would only be liable for such interest as was actually allowed on said $10,000 during the time the same was under the direction of the court. There is no evidence as to what interest said bank allowed or paid on such deposit and, in the opinion of this court, it was error to instruct the jury that it might include interest on this sum at six per cent. after the court had directed how such money should be kept.

Although the verdict does not show affirmatively that the jury allowed interest on this sum, or, if so, how much it allowed, yet in view of the instruction 5. of the court directing them to include interest at such rate, and it not appearing that such interest was not included, we must presume that the court's instruction in this regard was followed. The court is therefore of the opinion that the instruction on the question of interest was erroneous.

This case has been pending since 1917 and has been twice tried, each trial consuming several days and entailing a large expense. Two juries have passed upon the issues of fact involved, each returning a verdict of about the same amount. The court is of the opinion that it is desirable to avoid a retrial of the cause, if this is possible.

We are of the opinion that if any harm, which could have resulted to the appellants by the erroneous instruction as to the interest on the $10,000 deposit, can be rectified, and yet affirm the judgment, it would be to the interest of all parties.

It is a matter of common knowledge that banks will pay at least two per cent. on deposits placed with them to bear interest. We do not know from the record what interest the bank allowed in this case, 6, 7. neither do we know the amount of interest the jury allowed, but assuming that the court's instructions were followed and six per cent. was allowed on this $10,000 from July 24, 1917, when the court ordered the money kept in bank, until the date of the verdict, to wit, December 14, 1920, the most that could have been allowed as interest was $2,033.33. Deducting from this amount interest at the rate of two per cent. which, as is well known, is no more than would be paid for such a deposit, would leave $1,355.56 as the amount which the verdict may have been increased on account of said

erroneous instruction, over and above what the evidence would justify. In other words, the appellants could not have been harmed, in any event, more than the above amount by such instruction. Therefore, if the appellee remits in the Morgan Circuit Court, within thirty days from this date, and as of the date of such verdict, the sum of $1,355.56 and files in this court a certificate of the clerk of the Morgan Circuit Court showing such remittitur, the judgment of the Morgan Circuit Court will be affirmed. If such remittitur is not so filed, the judgment will be reversed, with instructions to the court below to sustain appellants' motion for a new trial.

This case was originally filed in the Marion Superior Court where a trial resulted in a verdict for appellee in the sum of $25,387.60. This verdict was rendered on April 2, 1918. The appellants filed a motion for a new trial, which was sustained, and thereafter the cause was venued to the Morgan Circuit Court, where upon a second trial a verdict in the sum of $25,267.58 was rendered on December 14, 1920. The second verdict, counting the interest, is materially smaller than the first. The appellee has assigned cross-error herein alleging that the Marion Superior Court erred in granting appellants' motion for a new trial, and by *certiorari* has brought up the record of the first trial. Appellee asks to have judgment ordered upon the first verdict.

Where a verdict has been set aside and a new trial granted, when no cause for a new trial existed, and upon a second trial a judgment is rendered which 8. is more favorable to the party obtaining the new trial than was the first verdict, the party that obtained the first verdict will be restored to his rights under that verdict. *Cummins* v. *Walden* (1837), 4 Blackf. 307; *Bisel* v. *Hobbs* (1843), 6 Blackf. 479; *Jones* v. *Cooprider* (1819), 1 Blackf. 47; *Gann* v. *Worman*

(1880), 69 Ind. 458; *Williams* v. *Thames Loan, etc., Co.* (1886), 105 Ind. 420; *Louisville, etc., R. Co.* v. *Miller* (1894), 141 Ind. 533, 37 N. E. 343.

It is also the rule that this court will not set aside the granting of a new trial except where it affirmatively appears that no cause for a new trial existed and it is clearly shown that the court abused its discretion in such ruling. *Powell* v. *Grimes* (1856), 8 Ind. 252; *Nagle* v. *Hornberger* (1854), 6 Ind. 69; *Daggett* v. *Flanagan* (1881), 78 Ind. 253; *Waddle* v. *Megee* (1881), 81 Ind. 247; *Barner* v. *Bayless* (1893), 134 Ind. 600.

In the cases where the first verdict has been reinstated the record showed that the new trial was granted for only one reason which did not in fact constitute a legal ground for a new trial.

In this case the motion for a new trial filed in the Marion Superior Court, and which was sustained, contained fifty specifications. The sufficiency of the evidence was challenged, the correctness of many instructions which were given was questioned, the refusal of many requested instructions was set up, and many alleged errors in rulings on the admission of evidence were specified.

The appellee in its brief on the cross-errors sets out only a few of the instructions given and refused, and which were specified in the motion for a new trial and only a very brief statement of the evidence is given. The appellee does not discuss in its brief all the specifications in the motion for a new trial and we cannot say from what is set out that no reason existed for the sustaining of said motion. Appellee does not attempt to discuss the whole record, but challenges the appellants to point out wherein there is error in the record of the first trial. This is not a burden that rests upon appellant. The appellee is alleging that there was no

error therein and the burden is upon appellee to show that none existed.

In view of the presumption in favor of the action of the lower court, we cannot say that it affirmatively appears that no cause for the granting of a new trial existed in the Marion Superior Court.

It is ordered that the appellee pay all costs incurred upon the assignment of cross-errors and the costs of bringing up the record of the first trial by *certiorari.*

It is ordered that if the appellee files its *remittitur* of $1,355.56 as hereinbefore indicated, then the appellants shall pay one-half the costs of the appeal from the judgment of the Morgan Circuit Court, and the appellee shall pay one-half thereof.

If such *remittitur* is not filed, then it is ordered that all costs of such appeal be adjudged against appellee.

Ewbank, C. J., not participating.